706 P.2d 1052 (1985)
The STATE of Utah, Plaintiff and Respondent,
v.
Calvin George SMITH, Jr., Defendant and Appellant.
No. 19089.
Supreme Court of Utah.
September 19, 1985.
*1054 James A. Valdez, Salt Lake City, for defendant and appellant.
David L. Wilkinson, Atty. Gen., Salt Lake City, for plaintiff and respondent.
HALL, Chief Justice.
Defendant Calvin Smith, Jr., was convicted of aggravated robbery, U.C.A., 1953, § 76-6-302 (1978 ed.), and theft, U.C.A., 1953, § 76-6-404 (1978 ed.). The sole evidence linking defendant to the robbery was accomplice testimony. Defendant contends that this evidence was insufficient to convict him. Defendant also contends that the trial court erred when, during defense counsel's closing argument, the judge prevented counsel from commenting on the prosecution's failure to produce certain witnesses. We affirm.
On the evening of January 1, 1981, at about 8:30 p.m., Alma Winn was accosted in his garage by two men who were armed with revolvers and wearing black nylon stockings over their faces. After a brief struggle, the men took Winn's wallet and fled. The wallet contained identification, credit cards, about $80 in cash, and a $10,000 unendorsed cashier's check. Winn could not identify his assailants.
During the summer of 1981, the police arrested Jay Sanchez for committing a robbery in South Jordan. The Salt Lake County Attorney granted Sanchez immunity from prosecution for a number of crimes, provided that Sanchez would testify fully and truthfully concerning his participation or the participation of any individuals who were involved in those crimes. There was also a blanket immunity provision for unnamed crimes. Under the blanket immunity provision, Sanchez confessed to the Winn robbery and named defendant as the driver of the getaway car. Sanchez also named two other participants, Jay Fernandez and Edwin Mitchell. Mitchell, Fernandez, *1055 and defendant were subsequently arrested and charged with aggravated robbery and theft.
On the evening before trial, Mitchell entered into a plea bargain agreement with the county prosecutor. Mitchell pleaded guilty to two robberies and agreed to truthfully testify to his knowledge of the Winn robbery in return for dismissal of charges of theft and possession of a firearm by a restricted person.
At trial, Sanchez and Mitchell both testified that defendant was the driver of the getaway car, a blue and brown Lincoln Continental that belonged to defendant. Both also testified that Mitchell and Fernandez were the actual robbers of Winn.
Defendant took the stand in his own defense and denied participation in the robbery. Defendant admitted that he was acquainted with Sanchez and Mitchell and was a friend of Fernandez. He also admitted owning a car like the one described and admitted that he had been with Fernandez early in the evening of January 1. However, he and his stepmother both testified that at the time of the robbery, defendant, who lived with his father and stepmother, was at home watching television.
The jury convicted defendant of aggravated robbery and theft.
Defendant's first point on appeal is that the state presented insufficient evidence to establish defendant's guilt beyond a reasonable doubt. Only three witnesses testified for the state: Winn, Sanchez, and Mitchell. Winn testified that he could not identify his assailants in any fashion. Thus, the sole evidence linking defendant to the robbery was the testimony of Sanchez and Mitchell, both of whom admitted their participation in the robbery.
U.C.A., 1953, § 77-17-7(1), states: "A conviction may be had on the uncorroborated testimony of an accomplice." The standard for determining whether an individual is an accomplice to a crime is whether that individual could be charged with the same offense as the defendant.[1] Clearly then both Sanchez and Mitchell were accomplices since both could have been charged for the robbery of Winn and theft from him. Further, defendant's conviction could be had solely on the testimony of Sanchez and Mitchell under section 77-17-7,[2] if the jury determined the testimony to be credible.[3] Thus, the next step is to determine whether the testimony of Sanchez and Mitchell, when viewed in the light most favorable to the jury verdict, was sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.[4] As the driver of the getaway car, defendant was convicted as an accomplice[5] in the aggravated robbery[6] of Winn and theft[7] from Winn.
*1056 Therefore, in order to convict defendant of aggravated robbery in this case, the jury had to find that defendant solicited, requested, commanded, encouraged, or intentionally aided another person or persons to engage in the robbery; defendant did so intentionally and knowingly; and a deadly weapon, firearm, or facsimile of a firearm was used in the commission of the crime. A robbery is committed when (a) personal property is taken from another person's possession, or is in the immediate presence of such other person at the time it is taken, (b) the property is taken contrary to the will of such other person, (c) the taking is accomplished by means of force or fear, (d) the taking is unlawful, and (e) the taking is intentional.
To convict defendant as an accomplice in the second degree felony theft of Mr. Winn's property, the jury had to find (1) that defendant solicited, requested, commanded, encouraged, or intentionally aided another person to obtain or exercise unauthorized control over the property of Winn; (2) that he did so intentionally, knowingly, or recklessly; (3) that the property did belong to Winn; (4) that defendant had the purpose at that time to deprive the owner of said property; and (5) that the value of said property exceeded $1,000, or that one of the actors in the crime was armed with a deadly weapon, or that the property was stolen from the person of another.
The evidence shows that defendant solicited, encouraged, and intentionally aided Sanchez, Mitchell, and Fernandez in the commission of the aggravated robbery and theft in this case. Sanchez testified that defendant had recruited Sanchez's help in the robbery. Mitchell testified that defendant, Fernandez, and Mitchell discussed the idea of "making money," i.e., committing some robberies, before the three of them ever left Mitchell's apartment on the evening of the Winn robbery. Both witnesses testified that Fernandez remarked in the presence of defendant that Fernandez knew of a retired colonel who had a lot of money, that Fernandez gave directions to the colonel's home, and that defendant drove to that home. Both witnesses also testified that defendant provided and drove the getaway car.
Further, according to the testimony given by Sanchez, Mitchell, and Winn, at least one firearm was used in the commission of the robbery. Winn's wallet which contained, among other things, the $10,000 cashier's check was forcibly removed from Winn's pants pocket by one of the assailants after Winn had been wrestled to the ground.
There is no question that conflicting evidence was adduced at trial which would negate defendant's participation in the theft and robbery. However, the jury is not obligated to believe that evidence. This Court is obliged to accept that version of the facts which the jury apparently believed and which supports the verdict.[8] The version of the facts which supports the verdict in this case shows that the elements of theft and aggravated robbery were all present. Thus, the evidence was not so lacking and insubstantial that a reasonable person could not have determined beyond a *1057 reasonable doubt that defendant committed both robbery and theft.
Defendant's second point on appeal revolves around a statement made by the trial judge during defense counsel's closing argument. In his closing argument, defense counsel argued that the state had failed to produce two key witnesses, Dickie Carrillo and Shawna Johnson, Sanchez's cousin and exgirlfriend, respectively, both of whom had participated with Sanchez in other robberies. Counsel suggested that the missing witnesses, and not the defendant, had participated in the Winn robbery. The trial judge interrupted defense counsel and said:
I'm going to tell the jury you had as much right to bring them in as anybody and they were not necessary, and the State did not have any requirement to bring them into this case regarding as to other matters. And the jury will disregard what Counsel said, where is Shawna Johnson and Dickie Carrillo, because the State had no burden as relates to them in this case and the defendant had all of the rights of the State to bring them in.
Defendant did not object to the judge's statement and did not request a jury instruction on the "missing witness" inference.
Defendant contends that the judge's comment infringed defendant's right under the Fifth Amendment to the United States Constitution and article I, section 12, of the Utah Constitution not to incriminate himself, and impermissibly shifted the burden of production of evidence to defendant. Defendant also contends that the refusal to allow defense counsel to comment on the missing witnesses effectively precluded defendant from presenting his theory of the case to the jury.
The first of these contentions is meritless. Defendant does not and cannot demonstrate how the judge's comment impaired defendant's right not to give evidence against himself, particularly since defendant waived the privilege of self-incrimination by taking the stand and offering his own testimony.[9] Further, the judge's comment in no way implied that defendant had an affirmative duty to call witnesses or shifted the burden of production. The judge throughout the trial and in the jury instructions made it clear that the state had the duty to adduce sufficient evidence to prove defendant guilty beyond a reasonable doubt. The judge's comment at most simply indicated that defendant could have called Carrillo and Johnson as witnesses had he believed that their testimonies were important, essential, or exculpatory.
Defendant's second contention is also without merit. Defendant argues that his major theory of the case was that he, defendant, did not participate in the robberies, but that Carrillo and Johnson did. Defendant argues that by refusing to allow defense counsel to comment on the missing witnesses, the court effectively precluded presentation of the defense theory of the case to the jury.
The missing witness inference has been judicially recognized for over a century[10] and has been summarized as follows:
[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it permits an inference that the testimony, if produced, would have been unfavorable.[11]
However, before a defendant can properly argue that the jury can draw such an inference from the absence of a witness, the defendant must establish that the missing witness was "peculiarly within the adversary's power to produce by showing either *1058 that the witness is physically available only to the opponent, or that the witness has the type of relationship with the opposing party that pragmatically renders his testimony unavailable to the opposing party."[12]
The record does not demonstrate any evidence that Carrillo and Johnson were peculiarly within the power of the state to produce as witnesses. These individuals were involved in no way in the instant case, and defendant elicited no shred of evidence to prove that their testimony was unavailable to defendant. Defendant, however, posits that the "missing" witnesses were practically unavailable since each would invoke the right against self-incrimination. This argument is unavailing. Without subpoenaing Carrillo and Johnson and examining them, defense counsel had no means of establishing whether Carrillo and Johnson would assert their privileges against self-incrimination. In order to establish Carrillo and Johnson's practical unavailability as witnesses, defense counsel was required to call them to the stand.[13] Had he done so, it is equally likely that each would have affirmatively denied participation in the robbery rather than assert the privilege.
Thus, comment by counsel as to the absent witnesses was properly prohibited by the judge since the conditions necessary for comment were lacking.
While it is true that the defendant has the right to have his theory of the case presented to the jury, it is also true that defendant must request such a jury instruction. If there is sufficient evidence to justify a proposed jury instruction on any given issue, the trial court has a duty to adequately instruct the jury on that issue.[14] In this case, defendant did not ask for a missing witness instruction and in fact waited until after the jury had been instructed and the state had argued its case to raise the absence of Carrillo and Johnson. Although defense counsel asked Sanchez during cross-examination if Carillo and Johnson were involved in the Winn robbery, those few questions and the negative responses elicited were clearly insufficient in the context of a two-day trial to make it obvious from the testimony that defendant's theory of the case was that Carrillo and Johnson committed the robbery and theft. The trial court therefore had no duty to allow defendant to argue the missing witness theory.
Defendant's conviction is affirmed.
HOWE, DURHAM and ZIMMERMAN, JJ., concur.
STEWART, J., concurs in the result.
NOTES
[1] State v. Berg, Utah, 613 P.2d 1125, 1126 (1980); State v. Comish, Utah, 560 P.2d 1134, 1136 (1977).
[2] Numerous states have held that a conviction can be had on the uncorroborated testimony of an accomplice. See, e.g., State v. Moore, 229 Kan. 73, 622 P.2d 631 (1981); State v. Harris, 102 Wash.2d 148, 685 P.2d 584 (1984); Ostrowski v. State, Wyo., 665 P.2d 471 (1983).
[3] U.C.A., 1953, § 77-17-7(2) (1982 ed.) states:

In the discretion of the court, an instruction to the jury may be given to the effect that such uncorroborated testimony should be viewed with caution, and such an instruction shall be given if the trial judge finds the testimony of the accomplice to be self contradictory, uncertain or improbable.
We note that such an instruction was given in this case.
[4] E.g., State v. Petree, Utah, 659 P.2d 443, 444 (1983).
[5] U.C.A., 1953, § 76-2-202 (1978 ed.), states:

Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.
[6] U.C.A., 1953, § 76-6-302 (1978 ed.), states in pertinent part:

(1) A person commits aggravated robbery if in the course of committing robbery, he:
(a) Uses a firearm or a facsimile of a firearm, knife or a facsimile of a knife or a deadly weapon; or
(b) Causes serious bodily injury upon another.
U.C.A., 1953, § 76-6-301(1) (1978 ed.), states:
Robbery is the unlawful and intentional taking of personal property in the possession of another from his person, or immediate presence, against his will, accomplished by means of force or fear.
[7] U.C.A., 1953, § 76-6-404 (1978 ed.), states:

A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof.
U.C.A., 1953, § 76-6-412 (1978 ed.), states in pertinent part:
(1) Theft of property and services as provided in this chapter shall be punishable as follows:
(a) As a felony of the second degree if:
(i) The value of the property or services exceeds $1,000; or
...
(iii) The actor is armed with a deadly weapon at the time of the theft; or
(iv) The property is stolen from the person of another.
[8] State v. Howell, Utah, 649 P.2d 91, 93 (1982).
[9] See State v. McCumber, Utah, 622 P.2d 353, 358 (1980); State v. Green, Utah, 578 P.2d 512, 514 (1978).
[10] See Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893).
[11] United States v. Young, 463 F.2d 934, 939 (D.C. Cir.1972) (footnote omitted). See also United States v. Mahone, 537 F.2d 922 (7th Cir.), cert. denied, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976).
[12] Chicago College of Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1353 (7th Cir.1983).
[13] See State v. White, Utah, 671 P.2d 191, 193-94 (1983).
[14] State v. Potter, Utah, 627 P.2d 75, 78 (1981).