**STATE of Utah, Plaintiff and Appellee,**

v.

**Russell Michael ONTIVEROS, Defendant and Appellant.**

**No. 910454–CA.**

Court of Appeals of Utah.

June 22, 1992.

Roybal became angry with Sandoval for occupying the telephone and began swearing and threatening to beat up Sandoval. When Ontiveros intervened and attempted to calm Roybal down, Roybal demanded that Ontiveros go outside and fight him. While Roybal was in the bedroom removing his necklace to prepare to fight, Ontiveros grabbed a knife from the kitchen sink. Once outside the apartment, Roybal and Ontiveros began pushing and bumping each other. Eventually Roybal punched Ontiveros in the mouth. Ontiveros responded by "punching" Roybal in the chest with the knife. Ontiveros then fled the scene, and Roybal returned to the house where he eventually died from the stab wound. Ontiveros was apprehended and was subsequently tried by a jury and convicted of manslaughter.

### B. Trial Procedure

Ontiveros was originally charged with second-degree murder, a first-degree felony. Ontiveros filed a motion to disqualify the trial judge because seven days prior to the incident involved in the present case, the trial judge had granted Ontiveros an early release on a previous conviction. Ontiveros contended that the trial judge "could not help but be biased and prejudiced against him for apparently breaking the Court's trust as evidenced by an early release." Upon considering the motion, the trial judge determined the affidavit in support of the recusal motion was legally insufficient and, following Rule 29 of the Utah Rules of Criminal Procedure, certified the motion to another judge for a ruling. The other judge determined the affidavit was legally insufficient and referred the case back to the trial judge.

Before trial, Ontiveros submitted to the trial court forty-four proposed voir dire questions and requested a pretrial ruling on which questions the trial court would ask. Ontiveros requested the pretrial ruling to avoid having to make any legal arguments in the presence of prospective jurors concerning the appropriateness of the proposed voir dire questions. The trial judge

Joan C. Watt (argued), Karen Jane Stam, Richard P. Mauro, Salt Lake Legal Defenders, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., J. Kevin Murphy (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Defendant, Russell Michael Ontiveros, appeals from his conviction for manslaughter, a second-degree felony in violation of Utah Code Ann. § 76–5–205 (1990). We affirm.

## BACKGROUND

### A. Facts

On the evening of December 27, 1990, Jessie Roybal, Russell Michael Ontiveros, and Timothy Roderick Sandoval (a stepson of Russell Ontiveros), among others, gathered at Roybal's apartment. The group sat around the kitchen table drinking alcoholic beverages.

deferred ruling on the proposed questions, stating:

> [I]t is more expeditiously handled if it's done at the time that we have the panel here and are engaged in the voir dire examination because it's a little hard for me in a vacuum to make rulings with regard to the appropriateness or propriety of any of the given questions.

During voir dire, the trial court questioned the prospective jurors and then allowed counsel for both sides to propose any additional questions. Ontiveros presented twenty-four additional questions, most of which, in one form or another, the trial court asked the prospective jury panel. In response to questioning concerning pretrial publicity, four prospective jurors (Moore, Lujan, Nelson, and Jones) acknowledged having read something concerning the present case. Moore, an editor for a local newspaper, recalled working on an article concerning the present case. Lujan recalled reading about the case and stated that he could remember limited details. Nelson and Jones stated they couldn't recall any details of what they had read concerning the case.

As part of his proposed voir dire questions, Ontiveros requested that the trial court individually question in chambers those four members of the jury who recalled hearing or reading something about the present case. In response to the request, the trial court asked the entire prospective jury panel simultaneously whether they could recall anything concerning the case and whether there was anything that would keep them from impartially hearing the case. None of the prospective jurors indicated that they would be unable to hear the case impartially. After posing these follow-up questions, the trial court denied Ontiveros's request for individual questioning of the prospective jurors.

Ultimately, Moore and Lujan were successfully challenged for cause. Nelson and Jones were allowed to sit on the jury after neither was challenged for cause or by peremptory challenge.

Prior to the presentation of jury instructions, Ontiveros submitted proposed jury instructions to the trial court. Included in the proposed instructions were: (1) An instruction concerning the distinction between manslaughter and negligent homicide, and (2) two instructions concerning reasonable doubt. The trial court instructed the jury concerning manslaughter, negligent homicide, and reasonable doubt, but declined to give Ontiveros's three proposed instructions.

The jury found Ontiveros guilty of the lesser included offense of manslaughter, a second-degree felony. Ontiveros moved for a new trial based on alleged errors in the jury selection process. The motion for a new trial was denied, and Ontiveros appealed his conviction, seeking reversal of his conviction and remand for a new trial.

## ISSUES ON APPEAL

On appeal, Ontiveros asserts the following trial court errors: (1) Failure of the trial judge to recuse himself; (2) refusal to ask Ontiveros's proposed follow-up questions to prospective jurors who had been exposed to pretrial publicity concerning the present case; (3) failure to issue a pretrial ruling as to which of Ontiveros's proposed voir dire questions the trial court would ask; (4) refusal to give Ontiveros's proposed jury instruction concerning the distinction between manslaughter and negligent homicide; and (5) refusal to give Ontiveros's proposed jury instruction concerning reasonable doubt. We will examine each of these claims in turn.

## TRIAL JUDGE RECUSAL

First, Ontiveros contends the trial judge committed error by failing to recuse himself. He argues that the trial judge "could not help but be biased" against him because the trial judge had granted Ontiveros an early release on an unrelated conviction, just seven days prior to the incident involved in the present case. In *State v. Neeley*, the Utah Supreme Court recommended that trial judges should recuse themselves when their " 'impartiality' might reasonably be questioned." 748 P.2d 1091, 1094 (Utah), *cert. denied*, 487

U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988) (citing Utah Code Jud. Conduct 3(C)(1)). However, the *Neeley* court determined that absent a showing of actual bias or an abuse of discretion, the failure of trial judges to recuse themselves "does not constitute reversible error as long as the requirements of [Rule 29 of the Utah Rules of Criminal Procedure] are met." *Id.*

Rule 29 states in part:

(c) If the prosecution or a defendant in any criminal action ... files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a bias or prejudice ... the judge shall proceed no further until the challenge is disposed of.

.        .        .        .        .

(d) If the challenged judge questions the sufficiency of the allegation of disqualification, he shall enter an order directing that a copy be forthwith certified to another named judge of the same court ..., which judge shall then pass upon the legal sufficiency of the allegations.... If the judge to whom the affidavit is certified finds that it is legally sufficient, another judge shall be called to try the case.... If the judge to whom the affidavit is certified does not find the affidavit to be legally sufficient, he shall enter a finding to that effect and the challenged judge shall proceed with the case or proceeding.

Utah R.Crim.P. 29(c) and (d).

■ In the present case, Ontiveros submitted an affidavit requesting that the trial judge recuse himself from the case. The trial judge determined the affidavit was legally insufficient to require recusal and, following the procedure of Rule 29, certified the affidavit to another judge for a ruling. After reading the affidavit and holding a hearing, the other judge determined the affidavit was not legally sufficient to require recusal and referred the case back to the trial judge. Because the

trial judge precisely followed the provisions of Rule 29, Ontiveros must show actual bias or an abuse of discretion in order to prevail on this point.

■ In his brief, Ontiveros does not attempt to show actual bias or an abuse of discretion. Instead he alleges the trial judge's failure to follow a presentence report recommending a ninety-day evaluation, and his refusal to lower bond resulted in an appearance of bias. However, a trial judge's failure to recuse himself based on an appearance of bias does not constitute error unless the substantial rights of the accused are affected. *See State v. Gardner*, 789 P.2d 273, 278 (Utah 1989). Rule 30 of the Utah Rules of Criminal Procedure provides that an error is not reversible unless the substantial rights of a party are affected. Utah R.Crim.P. 30. According to *State v. Fontana*, the Rule 30 language means that an error warrants reversal only if the reviewing court is persuaded that without the error there was a reasonable likelihood of a more favorable result for the defendant. 680 P.2d 1042, 1048 (Utah 1984) (quoting *State v. Hutchinson*, 655 P.2d 635, 637 (Utah 1982)). The recusal of the trial judge would not have created a reasonable likelihood of a more favorable result for Ontiveros given the following factors: (1) Ontiveros's guilt or innocence was determined by a jury, and (2) there was no showing of actual bias on the part of the trial judge. Thus, in light of the trial judge's compliance with Rule 29 and Ontiveros's failure to establish actual bias or an abuse of discretion, we find no error in the trial judge's refusal to recuse.    .

## VOIR DIRE

■ Ontiveros claims the trial court committed error in failing to ask follow-up questions to prospective jurors concerning their exposure to pretrial publicity.[1] "The manner and method of voir dire lies within the sound discretion of the trial court." *State v. James*, 819 P.2d 781, 797 (Utah

---

1. The State argues that Ontiveros did not preserve this issue for appeal because Ontiveros failed to challenge jurors Nelson and Jones. We believe the issue was sufficiently preserved because Ontiveros requested that the trial judge

individually question the prospective jurors and the trial judge ruled on the request. *See Salt Lake City v. Holtman*, 806 P.2d 235, 237 (Utah App.1991).

1991). Thus, we review only for an abuse of discretion. Whether a trial court abused its discretion in conducting voir dire depends on whether, "considering the totality of the questioning, counsel was afforded an adequate opportunity to acquire the information necessary to evaluate [prospective] jurors." *State v. Bishop*, 753 P.2d 439, 448 (Utah 1988); *accord State v. Sherard*, 818 P.2d 554, 558 (Utah App.1991).

▆▆▆ In the present case, four prospective jurors acknowledged having been exposed to some form of pretrial publicity. Any error concerning prospective jurors Moore and Lujan would have been harmless because they were successfully challenged for cause. The other two jurors, Nelson and Jones, acknowledged reading something about the present case, but indicated they couldn't recall any details. During subsequent voir dire, Ontiveros asked the trial court to allow individual questioning of the publicity-exposed jurors concerning the content of the publicity. The trial court responded by asking three separate follow-up questions concerning the prospective jurors' ability to hear the case impartially. After the prospective jurors had indicated they would be able to hear the case impartially, the trial judge denied the request for individual interrogation. Trial judges have a duty to safeguard the accused's constitutional right to an impartial jury. *State v. Woolley*, 810 P.2d 440, 442 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991). To protect an accused's right to an impartial jury, trial courts should exercise their discretion in favor of allowing counsel to question prospective jurors in order to detect actual bias and to permit counsel to make an informed exercise of peremptory challenges. *Sherard*, 818 P.2d at 558. However, "[t]he extent of voir dire is within the discretion of the trial judge, as long as counsel is given adequate information with which to evaluate prospective jurors." *Id.*

▆▆▆ In the present case, the trial court asked three separate questions regarding

exposure to pretrial publicity and the ability of the prospective jurors to hear the case impartially. The two publicity-exposed jurors who sat on the jury panel explicitly stated that they could remember no details concerning the case. Any further questioning could have required the two prospective jurors to recall details they could not remember and risked exposing them to facts concerning the present case. Considering the totality of the voir dire and the responses from Nelson and Jones, we find Ontiveros was given an adequate opportunity to acquire the information necessary to evaluate the prospective jurors. Thus, it was within the discretion of the trial court to limit voir dire. We cannot say the trial court in this case abused its discretion.[2]

## JURY INSTRUCTIONS

▆▆▆ Ontiveros argues that the trial court committed error in failing to instruct the jury on the distinction between manslaughter and negligent homicide. Ontiveros submitted a jury instruction explaining the distinction, but the court refused to give the instruction to the jury. "Whether the trial court's refusal to give a proposed jury instruction constitutes error is a question of law, which we review for correctness." *State v. Hamilton*, 827 P.2d 232, 238 (Utah 1992). We review jury instructions in their entirety and will affirm when the jury instructions taken as a whole fairly instruct the jury on the law applicable to the case. *State v. Haston*, 811 P.2d 929, 931 (Utah App.1991).

▆▆▆ A trial court has a duty to instruct the jury on the law applicable to the facts of the case. *State v. Potter*, 627 P.2d 75, 78 (Utah 1981). The defendant has a right to have his or her theory of the case presented to the jury in a clear and comprehensible manner. *State v. Smith*, 706 P.2d 1052, 1058 (Utah 1985). However, "[i]t is not error to refuse a proposed instruction if the point is properly covered in the other

**2.** Ontiveros also contends the trial court erred in failing to make a pretrial ruling as to which proposed voir dire questions the trial court would ask. While we agree that it might be advantageous for trial courts to make pretrial rulings concerning the nature and scope of voir dire, Ontiveros did not cite, and we have been unable to find, any case law to support Ontiveros's contention that it was error for the court not to have done so in this case.

instructions." *State v. Sessions*, 645 P.2d 643, 647 (Utah 1982); *see also State v. McCumber*, 622 P.2d 353, 359 (Utah 1980) (court refused proposed instruction because the essential points contained therein were covered by other instructions).

In the present case, Ontiveros submitted to the court a proposed instruction explaining the distinction between manslaughter and negligent homicide, which stated:

> With respect to [the] distinction between manslaughter based on recklessness and negligent homicide, the only difference between recklessness and criminally negligent conduct is that under the former, one perceives a risk and consciously disregards it, whereas under the latter, one fails to even perceive the risk; risk in both cases must be of such a degree that an ordinary person would not disregard or fail to recognize it, and thus [the] distinction is merely one of degree of perception of the risk.

The trial court, following the language found in Utah Code Ann. § 76–2–103(3) and (4) (1990), instructed the jury concerning both recklessness and criminal negligence. In Instruction Number 22, the trial court explained to the jury that "reckless" or "recklessly" means a person is aware of but consciously disregards a substantial and unjustified risk. In Instruction Number 25, the trial court explained that a person is criminally negligent when he or she ought to be aware of a substantial and unjustifiable risk. In both instructions the court explained that the risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise.

Viewing the jury instructions in their entirety, we find all of the essential elements of Ontiveros's proposed instruction were sufficiently covered in the trial court's instructions. The trial court's instructions defined both reckless and criminal negligence and each defined the nature of the risk involved. Having determined Ontiveros's proposed instruction was sufficiently covered by the actual instructions given, we cannot say the court erred in refusing to give Ontiveros's proposed instruction concerning the distinction between manslaughter and negligent homicide.

Moreover, the exact wording of Ontiveros's proposed instruction on the distinction between manslaughter and negligent homicide is not legally correct. The last line of Ontiveros's proposed instruction states, the "distinction is merely one of degree of perception of the risk." This wording obscures the legal distinction between manslaughter and negligent homicide. The actual distinction is that in the case of manslaughter the person perceives the risk of death and ignores it, while in the case of negligent homicide, the person does not perceive the risk, but should. *State v. Standiford*, 769 P.2d 254, 267 (Utah 1988). Thus, the distinction is whether one perceives the risk or doesn't perceive the risk. Ontiveros's proposed instruction suggests a legally incorrect distinction by stating that the distinction is merely one of degree of perception.

Ontiveros also contends that the trial court erred in not giving one or both of his proposed reasonable doubt instructions. We recently approved a reasonable doubt instruction identical to the instruction presented in this case. *See State v. Pedersen*, 802 P.2d 1328, 1331 (Utah App.1990), *cert. denied*, 815 P.2d 241 (Utah 1991).[3] Having determined in *Pedersen* that this trial court's reasonable doubt instruction was appropriate, "we need not consider whether [Ontiveros's] proposed instruction[s] might also have been proper." *State v. Maestas*, 815 P.2d 1319, 1324 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991).

### CONCLUSION

We affirm the conviction of Ontiveros.

GARFF and ORME, JJ., concur.

---

**3.** For a more in-depth analysis of this court's reasoning on the appropriateness of the trial court's reasonable doubt instruction, *see Pedersen*, 802 P.2d at 1331–32.