2009 UT App 368

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jesus A. JIMENEZ, Defendant and Appellant.**

**No. 20080892–CA.**

Court of Appeals of Utah.

Dec. 10, 2009.

Rehearing Denied Jan. 27, 2010.

---

Herschel Bullen, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeanne B. Inouye, asst. atty. gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., ORME and DAVIS, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶1 Defendant Jesus A. Jimenez appeals from his conviction as an accomplice to aggravated robbery with a one-year penalty enhancement for using a dangerous weapon, presenting several allegations of error. We affirm.

## BACKGROUND

¶2 On August 15, 2007, Faviola Hernandez was working in her salon cutting Leonel Hernandez's hair. Defendant drove his car to the salon, which is located near an intersection in Salt Lake City, Utah. Defendant's girlfriend, Cassandra Matern, was sitting in the back seat, and another friend, Miguel Mateos, was sitting in the front passenger seat. Defendant passed the salon several times, driving west then turning around and driving east, then turning around and driving west again, and then driving north and south on the cross-street.

¶3 Laura and Junior, Faviola's siblings, were playing at a nearby elementary school playground when they saw the car pass the salon several times. Video cameras at the elementary school captured images of the car driving back and forth. Laura and Junior left the playground and went inside the salon.

¶4 According to Matern's testimony, Defendant and Mateos were speaking in Spanish and she did not understand very much of the conversation. She became suspicious about the third time they drove past the salon. Defendant stopped the car just south of the salon. Mateos got out of the car and entered the salon. Defendant turned the car around again and told Matern to "get down to the back seat. He told [her] that [she] better get down."

¶5 According to the testimony of Leonel Hernandez, Faviola's customer, Mateos came in the salon, asked for money, pointed a gun at Leonel and told him to get on the ground. Mateos also told Laura and Junior to get on the ground. When Laura looked up, Mateos pointed the gun toward her. Faviola said "No. No, the kids. Don't hurt the kids." Mateos asked for Leonel's wallet and repeatedly asked Faviola for money. Leonel began getting money out of his wallet and told Faviola to give Mateos her money. Faviola went into the back of the salon and returned with a gun that she kept for protection. Then there was a gunshot and Mateos ran out. Leonel jumped up, locked the door, and called 911. Faviola told him she had been shot; only after she collapsed to the ground did he see blood coming from her chest. He tried to administer aid, attempting to stop the bleeding with a towel and telling her to keep breathing, but she stopped breathing, gasped for air, and blood began pouring out of her nose and mouth. When the police arrived, Faviola was dead on the floor of the salon.

¶6 Matern testified that after hearing the gunshot, she told Defendant to leave, but he refused. Mateos ran out of the salon, got into the back seat of the car, and Defendant drove away. The trio stopped at a nearby Wal–Mart, and, after parking, Mateos got out of the car and got into the front passenger seat. He was holding a gun. Mateos and Defendant removed the stereo from the car and hid the gun in the stereo space. Matern and Defendant went inside the Wal–Mart but Mateos stayed in the car and changed his shirt.

¶7 Defendant was convicted, as an accomplice, of criminal homicide and aggravated robbery with a one-year penalty enhance-

ment for using a dangerous weapon. He was sentenced to an indeterminate prison term of fifteen years to life for homicide, and an indeterminate prison term of six years to life for aggravated robbery (five years to life plus the one-year penalty enhancement). The sentences were ordered to run consecutively. Defendant now appeals the aggravated robbery conviction and the one-year penalty enhancement.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Defendant asserts that his trial counsel was ineffective in failing to move to dismiss the aggravated robbery charges at the end of the State's case, to move for a directed verdict, or to request a proper jury instruction and object to the penalty enhancement instructions. We review claims of ineffective assistance of counsel raised for the first time on appeal for correctness. *Cf. State v. Perry*, 2009 UT App 51, ¶ 9, 204 P.3d 880. To prevail on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment" and "that counsel's deficient performance was prejudicial— i.e., that it affected the outcome of the case." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

¶ 9 Defendant also asserts that the trial court erred in failing, sua sponte, to dismiss the aggravated robbery charge at the end of the State's case or to direct a verdict of dismissal at the close of all the evidence. Under the plain error doctrine, we reverse only if "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Lee*, 2006 UT 5, ¶ 26, 128 P.3d 1179 (internal quotation marks omitted).

¶ 10 Finally, Defendant asserts manifest injustice resulted because the trial court did not correctly instruct the jury on the element of aggravated robbery that requires the use of a dangerous weapon. "[I]n most circumstances the term 'manifest injustice' is synonymous with the 'plain error' standard." *State v. Alinas*, 2007 UT 83, ¶ 10, 171 P.3d 1046 (citations omitted).

## ANALYSIS

¶ 11 All of Defendant's arguments are related to the same essential theory: that Defendant did not know that Mateos had a weapon and, accordingly, cannot be convicted of either the "aggravated" part of aggravated robbery or the penalty enhancement. Defendant does not challenge the evidence's sufficiency to support his conviction as an accomplice to simple robbery. Because the statutory requirements differ, we will consider the arguments in relation to each charge, considering Defendant's arguments first as they apply to the aggravated robbery conviction, and second as they apply to the penalty enhancement.

### I. Aggravated Robbery

■■ ■■ To establish accomplice liability for aggravated robbery, the State must show that Defendant "solicit[ed], request[ed], command[ed], encourage[d], or intentionally aid[ed]" Mateos in committing an aggravated robbery. Utah Code Ann. § 76–2–202 (2008). Pertinent to this appeal, "[a] person commits aggravated robbery if in the course of committing robbery, he (a) uses or threatens to use a dangerous weapon [or] (b) causes serious bodily injury upon another." *Id.* § 76–6–302(1). Finally, simple robbery is outlined in Utah Code section 76–6–301:

(1) A person commits robbery if:

 (a) the person unlawfully and intentionally takes or attempts to take personal property in the possession of another from his person, or immediate presence, against his will, by means of force or fear, and with a purpose or intent to deprive the person permanently or temporarily of the personal property; or

 (b) the person intentionally or knowingly uses force or fear of immediate force against another in the course of committing a theft or wrongful appropriation.

(2) An act is considered to be "in the course of committing a theft or wrongful appropriation" if it occurs:

(a) in the course of an attempt to commit theft or wrongful appropriation;

(b) in the commission of theft or wrongful appropriation; or

(c) *in the immediate flight after the attempt or commission.*

*Id.* § 76–6–301(1)–(2) (emphasis added). In sum, to convict a defendant as an accomplice to aggravated robbery, "the jury [must] find that [the] defendant solicited, requested, commanded, encouraged, or intentionally aided another person . . . to engage in the robbery; [the] defendant did so intentionally and knowingly; and a deadly weapon . . . was used in the commission of the crime." *State v. Smith,* 706 P.2d 1052, 1056 (Utah 1985). These statutes do not state that accomplice liability for aggravated robbery requires that the accomplice knew a weapon was present.

¶ 13 Defendant asserts that defense counsel was deficient in failing to move for dismissal, and the trial court erred in failing to dismiss the charge sua sponte. However, both these arguments fail because Defendant falls squarely within the statutory scheme of accomplice liability for aggravated robbery. By its verdict, the jury found Defendant guilty of knowingly helping Mateos engage in a robbery—at the very least, the flight therefrom—and that Mateos used a weapon in the course of that robbery. The statutes do not require that the jury find that Defendant knew that Mateos had a gun before or during the robbery, or that Mateos was still using the gun while escaping. The evidence presented and unrebutted was that Defendant undoubtedly knew about the gun when he heard the gunshot and then saw it in Mateo's possession "in the immediate flight after the . . . commission" of the robbery, *see* Utah Code Ann. § 76–6–301(2)(c). Furthermore, Defendant could have been convicted of aggravated robbery not on the gun element, but on the alternate ground that he facilitated escape after Mateos "cause[d] serious bodily injury upon another." *See id.* § 76–6–302(1)(b). Accordingly, we conclude that there was no deficient performance by defense counsel or error by the trial court

related to Defendant's conviction of aggravated robbery.

## II. Penalty Enhancement

¶ 14 Defendant was also given a one-year penalty enhancement because Mateos used a dangerous weapon, pursuant to Utah Code section 76–3–203.8 (the penalty enhancement statute). The penalty enhancement statute states that "[a] defendant who is a party to a felony offense shall be sentenced to [a one-year penalty enhancement] if the trier of fact finds beyond a reasonable doubt that (a) a dangerous weapon was used in the commission or furtherance of the felony; and (b) the defendant knew that the dangerous weapon was present." *Id.* § 76–6–203.8(3).

¶ 15 Thus, in order to impose the penalty enhancement upon Defendant, the jury should have been asked to find both that Mateos had a gun and that Defendant knew about it. Defendant correctly asserts that neither the jury instructions nor the jury verdict form asked about Defendant's knowledge.

¶ 16 Jury instruction 41 stated, "You are instructed that under Utah law, if in the commission or furtherance of an Aggravated Robbery a defendant uses a dangerous weapon, he is subject to to [sic] an enhanced penalty." Jury instruction 42 stated,

You are instructed that if you find that the crime of Aggravated Robbery occurred, you must further find whether or not the defendant is subject to an enhanced penalty. In order to find that the defendant is subject to an enhanced penalty under Utah Law, you must find from all of the evidence and beyond a reasonable doubt, that: 1.[1] A dangerous weapon was used in the commission or furtherance of the Aggravated Robbery. If, after careful consideration of all of the evidence in this case, you are convinced of the truth of this element beyond a reasonable doubt, then you must find the defendant subject to an enhanced penalty pursuant to Utah Law. If, on the other hand, you are not convinced beyond a reasonable doubt of the foregoing ele-

---

1. Despite there being a "1" in the instruction, there is no "2," and use of the singular form of

"element" further indicates there was only one element upon which the jury was instructed.

ment, then you must find that the defendant is not subject to an enhanced penalty. The jury verdict form asked the jurors to find only whether "a dangerous weapon was used in the commission or furtherance of the Aggravated Robbery."

¶ 17 Defendant argues that the trial court erred in giving jury instructions that did not include knowledge as an element and that defense counsel provided ineffective assistance by not objecting or requesting a proper instruction. However, Defendant's claim that the trial court committed manifest error is unavailing. Rule 19 of the Utah Rules of Criminal Procedure states that "[u]nless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R.Crim. P. 19(e). In *State v. Hamilton*, 2003 UT 22, 70 P.3d 111, the Utah Supreme Court held that "if counsel, either by statement or act, affirmatively represented to the court that he or she had no objection to the jury instruction, we will not review the instruction under the manifest injustice exception" because the error was invited. *Id.* ¶ 54. In this case, defense counsel undeniably approved the instructions. Thus, Defendant is precluded from relief based upon manifest injustice.

 ¶ 18 As a corollary, it is clear that counsel's performance was deficient because counsel failed to object to the erroneous jury instruction or to offer a legally sufficient instruction. However, deficient performance alone does not validate a claim for ineffective assistance. We must also consider whether "counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In this case, we conclude that counsel's failure to request a proper jury instruction was not prejudicial because the jury had sufficient evidence to find that Defendant knew that Mateos had a weapon. The jury could have inferred from the evidence that Defendant knew Mateos had a gun when he entered the salon to commit a robbery: Defendant drove by the salon several times, told Matern to "get

down" in the back seat of the car, and waited for Mateos after the gunshot was heard. Then, despite having heard the gunshot and Matern's plea to leave, Defendant helped Mateos flee from the crime scene. Finally, Defendant helped Mateos hide the gun in Defendant's car. Accordingly, we conclude that, although defense counsel was deficient in failing to object to the incomplete jury instruction, Defendant has not demonstrated "a reasonable probability of a different outcome," *see State v. Clark*, 2004 UT 25, ¶ 8, 89 P.3d 162, if trial counsel had successfully requested a proper jury instruction.

## CONCLUSION

¶ 19 Defendant argues that he did not know that Mateos had a gun when Mateos left the car to go inside the salon. Whether Defendant knew that Mateos had a gun is immaterial to his conviction for aggravated robbery and we find no error in that conviction. Although Defendant's knowledge of the gun is material to the penalty-enhancement issue, we conclude that defense counsel's deficient performance did not affect the outcome of the case. We affirm.

¶ 20 WE CONCUR: GREGORY K. ORME, and JAMES Z. DAVIS, Judges.