2012 UT 41

**STATE of Utah, Plaintiff and Respondent,**

v.

**Jesus A. JIMENEZ, Defendant and Petitioner.**

No. 20100162.

Supreme Court of Utah.

July 6, 2012.

---

Mark L. Shurtleff, Att'y Gen., Jeanne B. Inouye, Asst. Att'y Gen., Salt Lake City, for respondent.

Herschel P. Bullen, Salt Lake City, for petitioner.

Associate Chief Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 A jury convicted Jesus Jimenez of aggravated robbery. The jury also found that Mr. Jimenez was subject to a one-year enhancement of his sentence because a dangerous weapon, a gun, was used in the course of the robbery. Mr. Jimenez appealed his conviction. The court of appeals affirmed. Mr. Jimenez contends that the court of appeals erred when it rejected his claim that his counsel was ineffective and his claim that the plain error exception to our preservation rules applied in his case. Mr. Jimenez's arguments are based on the contention that the State failed to prove he had knowledge of the principal's possession of a dangerous weapon. We first clarify the mental state required for the dangerous weapon aggravator in Utah Code section 76–6–302(1)(a). We hold that, because the legislature has made no indication that it is a strict liability offense, the statutory aggravator requires the culpable mental state of recklessness. Mr. Jimenez's claims on appeal do not require reversal, however, because he has not demonstrated that the errors caused him prejudice. We therefore affirm the conviction of aggravated robbery with a one-year penalty enhancement.

## BACKGROUND

¶ 2 On August 15, 2007, Mr. Jimenez repeatedly drove past a salon owned by Faviola Hernandez.[1] He was accompanied by his

1. In this opinion, we refer to Faviola Hernandez and the other individuals with the same last name by first name to reduce confusion.

girlfriend, Cassandra Matern, and his friend, Miguel Mateos. Ms. Matern was seated in the back seat of Mr. Jimenez's green Honda. Mr. Mateos sat in the front passenger seat. Mr. Jimenez passed the salon several times. First, he drove by west on California Avenue, then he turned around and drove east past the salon. He then turned around and drove west a second time. Finally, he drove north and then south on Navajo Street. Faviola's siblings, Laura and Junior, were playing at the nearby elementary school. The elementary school's surveillance cameras confirmed this pattern of driving.

¶ 3 Mr. Jimenez and Mr. Mateos spoke to each other in Spanish while Mr. Jimenez drove back and forth in front of the salon. Ms. Matern could not relate details of the conversation because she understands very little Spanish. Despite the language barrier, Ms. Matern became suspicious of the subject of the conversation and driving activity after Mr. Jimenez drove past the salon for the third time. Mr. Jimenez finally stopped the car just south of the salon. Mr. Mateos exited the car. Mr. Jimenez then turned the car around and told Ms. Matern to get down in the back seat. When she refused, he repeated that she "had better get down."

¶ 4 Mr. Mateos entered the salon. There, he found Faviola with a customer, Leonel Hernandez. Also inside were Laura and Junior, who had returned from the school playground. Mr. Mateos pointed a gun at Leonel, told him to get on the ground, and demanded money. Mr. Mateos also pointed the gun at Laura and Junior and told them to get on the ground. Faviola said, "No. No, not the kids." Mr. Mateos continued to demand money. Faviola went to the back of the salon and returned with a gun she kept for protection. The weapon failed to protect Faviola. Mr. Mateos shot her in the chest and left the salon. Leonel got up, locked the door to the salon, and called 911.

¶ 5 Faviola told Leonel that she had been shot and then collapsed. Leonel attempted to stop the bleeding with a towel, but when the police arrived at the salon, Faviola was dead.

¶ 6 Hearing the gunshot in the salon, Ms. Matern told Mr. Jimenez to leave, but Mr. Jimenez refused. Mr. Mateos returned to the car and got into the back seat. Mr. Jimenez drove to a nearby Wal–Mart where Mr. Mateos exited the back seat, still holding the gun. Mr. Mateos changed his shirt. Mr. Jimenez and Mr. Mateos then removed the car's stereo and hid the gun in the stereo space.

¶ 7 Mr. Jimenez was convicted as an accomplice to criminal homicide and to aggravated robbery with a one-year penalty enhancement. The court of appeals affirmed. We granted certiorari to determine whether the court of appeals erred in rejecting Mr. Jimenez's appellate arguments of ineffective assistance of counsel and plain error in relation to his conviction for aggravated robbery and the imposition of a penalty enhancement. We have jurisdiction under Utah Code section 78A–3–102(3)(a).

## STANDARD OF REVIEW

¶ 8 On certiorari, we review a decision of the court of appeals for correctness.[2]

## ANALYSIS

### I. UTAH CODE SECTION 76-6-302'S DANGEROUS WEAPON AGGRAVATOR IS NOT A STRICT LIABILITY OFFENSE

¶ 9 The court of appeals held that the aggravated robbery statute "do[es] not state that accomplice liability for aggravated robbery requires that the accomplice knew a weapon was present" when the crime was committed.[3] The State takes this a step further, arguing that the legislature has made a "policy decision that those participating in any robbery, whether as principals or as accomplices, who intend that a robbery be committed, face strict liability for the use of a gun." The State cites no authority for this proposition other than the statute itself. The statute provides, "A person commits aggra-

---

2. *Harold Selman, Inc. v. Box Elder Cnty.*, 2011 UT 18, ¶ 15, 251 P.3d 804.

3. *State v. Jimenez*, 2009 UT App 368, ¶ 12, 223 P.3d 461.

vated robbery if in the course of committing robbery, he: (a) uses or threatens to use a dangerous weapon...."[4] It is an "established first principle of the criminal law, with few exceptions, ... that the doing of a wrongful act without the requisite culpable mental state does not constitute a crime."[5] The aggravated robbery statute does not expressly specify the required mental state, but the legislature has provided guidance for such an omission.

> Every offense not involving strict liability shall require a culpable mental state, and when the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility. An offense shall involve strict liability if the statute defining the offense clearly indicates a legislative purpose to impose criminal responsibility for commission of the conduct prohibited by the statute without requiring proof of any culpable mental state.[6]

This court has stated that "[u]nder the Utah Criminal Code, a crime may be a strict liability crime only if the statute specifically states it to be such."[7] *State v. Elton* is an instructive example of an unlawful imposition of strict liability.[8] That case involved a defendant who engaged in sexual intercourse with a girl who was fourteen years old. He was convicted under Utah's unlawful sexual intercourse statute.[9] The statute at that time provided, " 'A person commits unlawful sexual intercourse if that person has sexual intercourse with a person, not that person's spouse, who is under sixteen years of age.' "[10] The defendant contested the trial court's instruction that mistake as to the girl's age was not a defense. We held that the language of the statute did not "clearly indicate 'a legislative purpose to impose strict liability' as required by § 76–2–102."[11] *Elton* also demonstrates the legislature's ability to impose strict liability for an offense, as after the defendant's conviction but before our opinion on Mr. Elton's appeal was published, "the Legislature ... amended the Utah Criminal Code in 1983 to disallow mistake of fact as to age as a defense to the crime of unlawful sexual intercourse."[12]

¶ 10 Generally, to be found guilty of an offense under an accomplice liability theory, the accomplice must "act[ ] with the mental state required for the commission of [that] offense."[13] Mr. Jimenez argues that, in contrast with the aggravated robbery statute, the aggravated burglary statute is crafted to hold accomplices liable for a dangerous weapon aggravator without proof of a culpable mental state. The aggravated burglary statute provides that a "person is guilty of aggravated burglary if in attempting, committing, or fleeing from a burglary the actor *or another participant in the crime* ... possesses or attempts to use any explosive or dangerous weapon."[14]

¶ 11 The aggravated robbery statute contains no indication that the general rules of mental culpability do not apply. In contrast to the current version of Utah's unlawful sexual intercourse statute, the robbery statute contains no language indicating that the aggravator imposes strict liability.[15] Absent

---

4.  Utah Code § 76–6–302(1).

5.  *State v. Elton,* 680 P.2d 727, 728 (Utah 1984), *superseded by statute,* Utah Code § 76–2–304.5(2).

6.  Utah Code § 76–2–102.

7.  *Elton,* 680 P.2d at 728.

8.  *Id.*

9.  *Id.*

10. *Id.* (quoting Utah Code Ann. § 76–5–401(1) (1981)).

11. *Id.* at 729 (quoting Utah Code Ann. § 76–2–102 (1981)).

12. *Id.* at 732 n. 8; *see also State v. Martinez,* 2002 UT 80, ¶ 1, 52 P.3d 1276 (upholding imposition of strict liability to unlawful sexual intercourse with a minor statute).

13. Utah Code § 76–2–202.

14. *Id.* § 76–6–203(1)(c) (emphasis added). The mental component of the aggravated burglary statute is not before us in this case. We note it because Mr. Jimenez argues that the contrast is illustrative.

15. The State points us to a footnote in *State v. Durant,* 674 P.2d 638, 645 n. 4 (Utah 1983), that compares the aggravated arson statute with the aggravated burglary and aggravated robbery stat-

any indication that the legislature intended to eliminate the mental component of the crime, strict liability is inapplicable. This court recently encountered a case where "[t]he juvenile court agreed with the prosecution, acknowledging that [the alleged accomplice's] knowledge of the gun was the 'key element' " for the charge of aggravated robbery.[16] We now clarify that, in the absence of a specified mental state in Utah Code section 76–6–302, we follow section 76–2–102, which imposes the culpable mental state of recklessness.

## II. MR. JIMENEZ HAS NOT SHOWN INEFFECTIVE ASSISTANCE OF COUNSEL OR PLAIN ERROR IN HIS CHALLENGE TO HIS AGGRAVATED ROBBERY CONVICTION

■ ¶ 12 Having determined that the State was required to prove that Mr. Jimenez was at least reckless regarding the use of a gun in the robbery, we turn now to his ineffective assistance of counsel claim. The Supreme Court established a two-part test for evaluating a defendant's claim of ineffective assistance of counsel: "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense."[17] This requires the defendant to "proffer evidence sufficient to support a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[18]

¶ 13 The trial court asked Mr. Jimenez's counsel, "Do you believe that [the State] ha[s] to show prior knowledge that [the principal] had a gun on him?" Mr. Jimenez's counsel replied, "No, just that he was going in ... [to][c]ommit the robbery." Consequently, Mr. Jimenez did not have the opportunity to argue that even if he could be found guilty of robbery, he did not have the requi-

site mental state for the dangerous weapon aggravator. The State counters that counsel made a reasonable strategic choice to argue that there was insufficient evidence to prove Mr. Jimenez knew Mr. Mateos was going to commit a robbery at all. The State asserts that it would have weakened the credibility of the defense to argue that Mr. Jimenez had no knowledge of the robbery, but if he did know about the robbery, he did not know about the gun. It may have been reasonable for counsel to focus on the robbery itself instead of the dangerous weapon aggravator, but it was not reasonable to relieve the State of its burden to prove that Mr. Jimenez had the mental state required for aggravated robbery. Failing to instruct the jury on the mental component of aggravated robbery served no tactical purpose. Counsel's performance therefore fell below an objective standard of reasonableness.

■ ¶ 14 Mr. Jimenez has not established, however, that his defense was prejudiced by counsel's errors. The evidence indicating that Mr. Jimenez was aware of the gun is strong. The court of appeals listed the evidence as follows:

> Defendant drove by the salon several times, told Matern to "get down" in the back seat of the car, and waited for Mateos after the gunshot was heard. Then, despite having heard the gunshot and Matern's plea to leave, Defendant helped Mateos flee from the crime scene. Finally, Defendant helped Mateos hide the gun in Defendant's car.[19]

Furthermore, Mr. Jimenez has not argued on appeal that he was not reckless with regard to the possibility that a gun would be used. Our law provides that one acts recklessly when one is

utes. The footnote explains that in the latter two statutes "the presence of a deadly weapon ... is sufficient to elevate the offense to a first degree felony without evidence of the actual intent or knowledge of the accused." To the extent that language is inconsistent with this opinion, this opinion is controlling.

16. *State v. I.R.C. (State ex rel. I.R.C.),* 2010 UT 41, ¶ 9, 232 P.3d 1040.

17. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

18. *Taylor v. Warden,* 905 P.2d 277, 282 (Utah 1995) (internal quotation marks omitted).

19. *State v. Jimenez,* 2009 UT App 368, ¶ 18, 223 P.3d 461.

aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.[20]

Mr. Jimenez's theory on appeal is centered on the lack of evidence that he knew Mr. Mateos had a gun when he left the car to commit the robbery. Mr. Jimenez argues that "there is evidence from the testimony of Cassandra Matern that both she and Jimenez were aware of the gun *after* Mateos returned from [the salon]" and that Ms. Matern "was surprised when she heard a shot coming from [the salon]." This argument acknowledges that before the "immediate flight"[21] from the robbery, it was clear that a dangerous weapon was used. By driving the getaway car, Mr. Jimenez became an accomplice to the aggravated robbery.[22] Although trial counsel never argued that Mr. Jimenez lacked the requisite mental state regarding the use of a gun during the robbery he facilitated, the evidence in this case does not leave room for a reasonable probability that, but for this error, the result of the proceeding would have been different.[23]

¶ 15 The lack of prejudice is also dispositive in Mr. Jimenez's plain error claim, which requires the defendant to show that the error was harmful.[24]

## III. MR. JIMENEZ HAS NOT SHOWN INEFFECTIVE ASSISTANCE OF COUNSEL OR MANIFEST INJUSTICE IN HIS CHALLENGE TO THE WEAPON ENHANCEMENT

¶ 16 Utah's dangerous weapon enhancement statute expressly requires the defendant to have knowledge that the weapon was present. The statute provides,

A defendant who is a party to a felony offense shall be sentenced to the increases in punishment ... if the trier of fact finds beyond a reasonable doubt that:

(a) a dangerous weapon was used in the commission or furtherance of the felony; and

(b) the defendant knew that the dangerous weapon was present.[25]

¶ 17 Mr. Jimenez argues that he was deprived of effective assistance of counsel because his defense counsel failed to request the proper jury instruction for the dangerous weapon enhancement. Neither the jury instructions nor the jury verdict form asked about Mr. Jimenez's knowledge that a dangerous weapon was present. Jury instruction 41 read, "You are instructed that under Utah law, if in the commission or furtherance of an Aggravated Robbery a defendant uses a dangerous weapon, he is subject to to [sic]

---

**20.** Utah Code § 76–2–103(3).

**21.** *See id.* § 76–6–302(3) ("For the purposes of this part, an act shall be considered to be 'in the course of committing a robbery' if it occurs in an attempt to commit, during the commission of, or in the immediate flight after the attempt or commission of a robbery."); *id.* § 76–6–301(2)(c) ("An act is considered to be 'in the course of committing a theft or wrongful appropriation' if it occurs ... in the immediate flight after the attempt or commission.").

**22.** *See, e.g., M.B. v. State. (State ex rel. M.B.),* 2008 UT App 433, ¶ 17, 198 P.3d 1007 ("We additionally acknowledge that *drivers* of getaway cars are typically found guilty under accomplice liability theories because, as a driver, they inherently show active involvement in the crime. *See, e.g., State v. Smith,* 706 P.2d 1052, 1056 (Utah 1985) (holding defendant guilty of felony theft when evidence showed he was the driver of the getaway car and other additional evidence supported his involvement in the crime); *State v. Murphy,* 26 Utah 2d 330, 489 P.2d 430, 431–32 (1971) (determining that the defendant was guilty of first degree murder committed during a robbery when the defendant drove one getaway car to the location of a second getaway car).").

**23.** Because we find no prejudice relating to the dangerous weapon aggravator, we do not address the State's argument that there was no prejudice because another statutory aggravator— serious bodily injury under Utah Code section 76–6–302(1)(b)—supports the verdict.

**24.** *State v. Munguia,* 2011 UT 5, ¶ 13, 253 P.3d 1082 ("The prejudice analysis is the same under both a plain error and ineffective assistance of counsel framework." (internal quotation marks omitted)).

**25.** Utah Code § 76–3–203.8(3).

an enhanced penalty." Additionally, jury instruction 42 stated,

> You are instructed that if you find that the crime of Aggravated Robbery occurred, you must further find whether or not the defendant is subject to an enhanced penalty. In order to find that the defendant is subject to an enhanced penalty under Utah Law, you must find from all the evidence and beyond a reasonable doubt, that:
>
> 1. A dangerous weapon was used in the commission or furtherance of the Aggravated Robbery.
>
> If, after careful consideration of all the evidence in this case, you are convinced of the truth of this element beyond a reasonable doubt, then you must find the defendant subject to an enhanced penalty pursuant to Utah Law. If, on the other hand, you are not convinced beyond a reasonable doubt of the foregoing element, then you must find that the defendant is not subject to an enhanced penalty.

¶ 18 Defense counsel should have objected to the instructions because they did not include both elements required by the statute: use of a dangerous weapon and knowledge by the defendant that a dangerous weapon was present. Defense counsel's performance in relation to the sentencing enhancement was clearly deficient.

¶ 19 Mr. Jimenez next "must show that the deficient performance prejudiced the defense." [26] The evidence is clear that Mr. Jimenez knew about the gun. As outlined above: (1) Mr. Jimenez drove Mr. Mateos back and forth before parking near the salon; (2) Mr. Jimenez told Ms. Matern to "get down" in the back seat of the car; (3) a gun shot rang out during the course of the robbery; (4) despite Ms. Matern urging him to leave at this point, Mr. Jimenez waited for Mr. Mateos to return; (5) Mr. Jimenez drove Mr. Mateos to Wal–Mart, facilitating Mr. Mateos's flight from the crime scene; and (6) Mr. Jimenez then helped hide the gun in his

car. Accordingly, we conclude that although defense counsel was deficient for failing to object to the erroneous jury instructions, Mr. Jimenez did not offer "evidence sufficient to support a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." [27] Although counsel should have requested a proper jury instruction, our confidence in the verdict is strong. Mr. Jimenez therefore cannot prevail on his ineffective assistance of counsel claim.

¶ 20 The lack of prejudice is also dispositive of Mr. Jimenez's manifest injustice claim. Manifest injustice is synonymous with the plain error standard,[28] which requires an appellant to show "the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." [29]

## CONCLUSION

¶ 21 In Utah's aggravated robbery statute, use of a dangerous weapon requires the culpable mental state of recklessness. Utah's dangerous weapon enhancement statute requires the culpable mental state of knowledge. Because the evidence is strong that Mr. Jimenez knew Mr. Mateos used a gun during the robbery, Mr. Jimenez cannot show that errors made by counsel or the court harmed his defense. We therefore affirm the verdict in this case.

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, JUSTICE PARRISH, and JUSTICE LEE joined.

---

26. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

27. *Taylor v. Warden*, 905 P.2d 277, 282 (Utah 1995) (internal quotation marks omitted).

28. *State v. Casey*, 2003 UT 55, ¶ 40, 82 P.3d 1106.

29. *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (internal quotation marks omitted).