2014 CO 62

In the MATTER OF the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE FOR 2013–2014 #85

Mizraim Cordero and Scott Prestidge, Petitioners

v.

Caitlin Leahy and Gregory Diamond, Respondents

and

Suzanne Staiert, Daniel Domenico, and Jason Gelender, Title Board

In the Matter of the Title, Ballot Title and Submission Clause for 2013–2014 #86

Mizraim Cordero and Scott Prestidge, Petitioners/Cross-Respondents

v.

Caitlin Leahy and Gregory Diamond, Respondents/Cross-Petitioners

and

Suzanne Staiert, Daniel Domenico, and Jason Gelender, Title Board

In the Matter of the Title, Ballot Title and Submission Clause for 2013–2014 #87

Mizraim Cordero and Scott Prestidge, Petitioners/Cross-Respondents

v.

Caitlin Leahy and Gregory Diamond, Respondents/Cross-Petitioners

and

Suzanne Staiert, Daniel Domenico, and Jason Gelender, Title Board

Supreme Court Case No. 14SA116, Supreme Court Case No. 14SA119, Supreme Court Case No. 14SA122

Supreme Court of Colorado.

June 30, 2014

Attorneys for Petitioners: Brownstein Hyatt Farber Schreck LLP Sarah M. Clark Michael F. Feeley Denver, CO

Attorneys for Respondents: Heizer Paul LLP Martha M. Tierney Edward T. Ramey Denver, CO

Attorneys for Ballot Title Board John W. Suthers, Attorney General Sueanna P. Johnson, Assistant Attorney General Denver, Colorado

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶ 1 In this opinion, we review the actions of the Title Board in setting titles and ballot title and submission clauses (collectively, "titles") for Initiatives 2013–2014 # 85, # 86, and # 87 (collectively, "Proposed Initiatives").[1] We hold that each of the Proposed Initiatives contains one subject—the creation of a statewide setback from occupied structures for new oil and gas wells. We also hold that the titles set by the Title Board fairly reflect the purpose of the Proposed Initiatives and are not misleading. We therefore affirm the actions of the Title Board.

## I. Facts and Procedural History

¶ 2 Caitlin Leahy and Gregory Diamond ("Proponents") are the designated proponents of the Proposed Initiatives. These initiatives are substantially similar in language, and are alternative versions of a single measure Proponents seek to place on the ballot for the 2014 general election.[2] Each initiative would amend the Colorado Constitution by creating article XXX, which would establish a statewide setback requirement for new oil and gas wells; that is, new oil and gas wells would have to be located at least a specified distance from any occupied structure. The Proposed Initiatives differ in that Initiative # 85 requires a 1500 foot setback, Initiative # 86 requires a 2000 foot setback, and Initiative # 87 requires a half-mile (2640 foot) setback.[3] The Proposed Initiatives state that the required setbacks do not constitute a taking under the Colorado Constitution, article II, sections 14 and 15. Finally, the Proposed Initiatives authorize a homeowner to waive the setback requirement with regard to his or her home.

¶ 3 On March 21, 2014, Proponents submitted a final version of the Proposed Initiatives with the Secretary of State. On April 3, 2014, the Title Board conducted hearings for each initiative and set titles in accordance with section 1–40–106(1), C.R.S. (2013). On April 10, 2014, Mizraim Cordero and Scott Prestidge ("Petitioners") filed motions for rehearing, arguing that the Proposed Initia-

---

1. The texts and titles of Initiatives # 85, # 86, and # 87 are attached as Appendices A, B, and C, respectively.

2. Another version of this measure is Initiative 2013–2014 # 88. This court affirmed the title for Initiative # 88 without opinion in 14SA125.

3. Proposed Initiative # 85 uses the term "oil and gas operations," whereas # 86 and # 87 use the term "oil and gas development." Because the parties do not contend that there is any meaningful difference between these terms, this opinion simply uses the term "oil and gas development."

tives violate the single subject requirement and that the titles are unclear and misleading. Petitioners further argued that the titles of Initiatives # 86 and # 87 "improperly conflict" with the title set for proposed Initiative # 85, in violation of section 1–40–106(1)(b), which provides that titles "shall not conflict with those selected for any petition previously filed for the same election."

¶ 4 Following a rehearing on April 16, 2014, the Title Board concluded that the Proposed Initiatives contained a single subject, but modified the titles in response to concerns raised by Petitioners. Specifically, the Title Board removed the term "hydraulic fracturing" after determining that it was a catch phrase and politically charged. The Title Board also amended the titles to clarify that the Proposed Initiatives change existing statewide setback requirements. The Title Board rejected Petitioners' arguments regarding conflicting titles, observing that proponents commonly submit alternative versions of a single measure to the Title Board. The Title Board accepted Proponents' representations that they will collect signatures on only one version of their proposed initiative, and observed that the concern with conflicting titles instead generally lies where *different sets of proponents* circulate similar measures that may confuse voters. Following the rehearing, the title set for Initiative # 85 states:

> An amendment to the Colorado constitution concerning a statewide setback requirement for new oil and gas wells, and, in connection therewith, changing existing setback requirements to require any new oil or gas well to be located at least 1,500 feet from the nearest occupied structure; authorizing a homeowner to waive the setback requirement for the homeowner's home; and establishing that the statewide setback requirement is not a taking of private property requiring compensation under the Colorado constitution.

¶ 5 The titles set for Initiatives # 86 and # 87 are identical in all respects to the titles set for Initiative # 85, except for the setback requirements of 2000 feet and one-half mile, respectively.

¶ 6 Petitioners challenge the Title Board's actions under section 1–40–107(2), C.R.S. (2013). Petitioners contend that the Title Board erred in setting titles because the Proposed Initiatives contain multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5, C.R.S. (2013). Petitioners also contend that the titles of the Proposed Initiatives are misleading because: (1) the titles fail to inform voters that the Proposed Initiatives do not bar federal takings claims under the United States Constitution; (2) the titles fail to inform voters that the Proposed Initiatives may only affect oil and gas resources belonging to the state of Colorado; (3) the titles use the catchphrase "statewide setback" rather than the word "prohibition"; and (4) the titles for Initiatives # 86 and # 87 conflict with the title set for Initiative # 85.

¶ 7 Proponents filed a cross-petition with regard to Initiatives # 86 and # 87. The cross-petition argues that in excluding the phrase "hydraulic fracturing" from the titles of Initiatives # 86 and # 87, the Title Board rendered the titles incomplete and unclear.

## II. Standard of Review

¶ 8 In reviewing Title Board decisions "we employ all legitimate presumptions in favor of the propriety of the Board's actions." *In re Title, Ballot Title & Submission Clause for 2011–2012 No. 3,* 2012 CO 25, ¶ 6, 274 P.3d 562, 565; *In re Title, Ballot Title & Submission Clause for 2009–2010 No. 45,* 234 P.3d 642, 645 (Colo.2010). We will only overturn the Title Board's finding that an initiative contains a single subject in a clear case. *In re 2011–2012 No. 3,* 274 P.3d at 565.

¶ 9 The Title Board is vested with considerable discretion in setting the title and ballot title and submission clause. *In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative on Parental Choice in Educ.,* 917 P.2d 292, 294 (Colo. 1996). We will reverse the Title Board's decision only if a title is insufficient, unfair, or misleading. *In re 2009–2010 No. 45,* 234 P.3d at 648; *see also In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 No. 29,* 972 P.2d 257, 266 (Colo.1999)

(observing that this court will reverse a title only if it contains a "material omission, misstatement, or misrepresentation") (internal quotation marks omitted).

¶ 10 In our limited review of the Title Board's actions, we do not address the merits of the proposed initiatives nor suggest how they might be applied if enacted. *In re 2011– 2012 No. 3*, 274 P.3d at 565. However, we must examine their wording to determine whether the initiatives and their titles comport with the single-subject and clear title requirements. *In re Title, Ballot Title & Submission Clause, & Summary for 2005– 2006 No. 75*, 138 P.3d 267, 271 (Colo.2006). In conducting this limited inquiry, we employ the general rules of statutory construction and give words and phrases their plain and ordinary meaning. *In re Title, Ballot Title & Submission Clause for 2007–2008 No. 17*, 172 P.3d 871, 874 (Colo.2007).

### III. Analysis

#### A. Single Subject Requirement

¶ 11 Petitioners assert that the Title Board lacked authority to set the titles because the Proposed Initiatives contain multiple subjects in violation of the single subject requirement in article V, section 1(5.5) of the Colorado Constitution, which provides:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

*See also* § 1–40–106.5(1)(a), C.R.S. (2013) (addressing the constitutional single subject requirement).

¶ 12 The single subject requirement serves two functions: (1) "[t]o forbid the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits"; and (2) "[t]o prevent surreptitious measures and apprise the people of the subject of each measure, that is, to prevent surprise and fraud from being practiced upon voters." § 1–40–106.5(1)(e). Thus, "the subject matter of an initiative must be necessarily and properly connected rather than disconnected or incongruous." *In re Title, Ballot Title & Submission Clause for 2011–2012 No. 3*, 2012 CO 25, ¶ 9, 274 P.3d 562, 565 (internal quotation marks and citation omitted). An initiative violates the single subject requirement where it relates to more than one subject and has at least two distinct and separate purposes. *Id.* (citing *People ex. rel. Elder v. Sours*, 31 Colo. 369, 403, 74 P. 167, 177 (1903)). Conversely, a proposed initiative that "tends to affect or carry out one general objective or purpose presents only one subject," and "provisions necessary to effectuate the purpose of the measure are properly included within its text." *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 No. 256*, 12 P.3d 246, 253 (Colo. 2000).

¶ 13 Because the Title Board "is vested with considerable discretion in setting the title [and] ballot title and submission clause," in reviewing actions of the Title Board, "we must liberally construe the single-subject requirements for initiatives." *In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative "1996–17"*, 920 P.2d 798, 802 (Colo.1996) (per curiam). We also liberally construe the single subject requirement to "avoid unduly restricting the initiative process." *In re Title, Ballot Title & Submission Clause for 2009–2010 No. 24*, 218 P.3d 350, 353 (Colo.2009).

#### 1. The Titles Satisfy the Single Subject Requirement

¶ 14 The Proposed Initiatives require a statewide setback requirement for new oil and gas wells. Initiative # 85 requires that new oil and gas wells be at least 1500 feet

from any occupied structure. Initiatives # 86 and # 87 are substantially similar to Initiative # 85, except that new oil and gas wells must be located at least 2000 feet or one-half mile (2640 feet), respectively, from any occupied structure. Section 3 of each initiative declares that "application of the statewide setback established pursuant to this article shall not be considered a taking of private property nor require the payment of just compensation pursuant to sections 14 and 15 of article II of the Colorado constitution."

¶ 15 Petitioners contend that the "not a taking" provision constitutes an impermissible second subject because it "alter[s] the rights and protections afforded to property owners under sections 14 and 15 of article II of the Colorado Constitution." However, the "not a taking" provision is directly related to the subject of the initiative: the creation of a statewide setback from occupied structures for new oil and gas wells. Each initiative states that "[a]pplication of the statewide setback established pursuant to this article shall not be considered a taking of private property nor require the payment of just compensation pursuant to sections 14 and 15 of article II of the Colorado constitution." Thus, by its own terms, the "not a taking" provision in each initiative applies only to the statewide setback requirement that would be established under the Proposed Initiatives if passed by the voters. Nothing in the Proposed Initiatives indicates any broader reach of the "not a taking" provision. Rather, this provision is necessarily and properly connected to—if not completely dependent upon— the statewide setback requirements that would be established under the Proposed Initiatives. Indeed, the "not a taking" provision is inoperative without reference to the setback requirement.

¶ 16 Petitioners argue that the "not a taking" provision "could surprise voters who believe the oil and gas industry is the only group who stands to lose anything under the Proposed Initiative[s]." Petitioners also argue that "there is a risk that voters will be deceived into inadvertently adopting something they do not support in the process of voting for something they do support." Yet the "not a taking" provision is clearly stated in the text of each initiative and is clearly reflected in each title. Thus, the concerns regarding voter fraud and surprise are not implicated in the Proposed Initiatives. *See In re Title, Ballot Title & Submission Clause for Proposed Initiative 2001–2002 No. 43*, 46 P.3d 438, 442 (Colo.2002) ("The ... danger associated with omnibus initiatives is the voter surprise and fraud occasioned by the inadvertent passage of a surreptitious provision 'coiled up in the folds' of a complex initiative."); *In re Title, Ballot Title & Submission Clause for 1997–1998 No. 30*, 959 P.2d 822, 825 (Colo.1998) ("The risk of uninformed voting caused by items concealed within a lengthy or complex proposal is what the single subject requirement seeks to avoid.").

¶ 17 In short, we hold that the Proposed Initiatives contain one subject—the creation of a statewide setback from occupied structures for new oil and gas wells. The provisions declaring that the setbacks are not considered takings under the Colorado Constitution are necessarily and properly connected to the setback requirements of the Proposed Initiatives.

## B. Clear Title Requirement

¶ 18 The Colorado Constitution dictates that an initiative's single subject shall be clearly expressed in its title. *See* Colo. Const. art. V, § 1(5.5); *In re Title, Ballot Title & Submission Clause for 2011–2012 No. 45*, 2012 CO 26, ¶ 21, 274 P.3d 576, 581. The title and submission clause should enable the electorate, whether familiar or unfamiliar with the subject matter of a particular proposal, to determine intelligently whether to support or oppose such a proposal. *In re Title, Ballot Title & Submission Clause for 2009–2010 No. 45*, 234 P.3d 642, 648 (Colo. 2010) (internal quotation marks and citations omitted). When it sets a title, the Title Board "shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes/for' or 'no/against' vote will be un-

clear." § 1–40–106(3)(b), C.R.S. (2013).[4] The title "shall correctly and fairly express the true intent and meaning" of the initiative. *Id.*

¶ 19 The Title Board is given discretion in resolving interrelated problems of length, complexity, and clarity in setting a title and ballot title and submission clause. *In re Title, Ballot Title & Submission Clause, & Summary Clause for a Petition on Sch. Fin.*, 875 P.2d 207, 212 (Colo.1994). The Title Board's duty in setting a title is to summarize the central features of the proposed initiative; in so doing, the Title Board is not required to explain the meaning or potential effects of the proposed initiative on the current statutory scheme. *See id.*

¶ 20 When reviewing a challenge to the title and ballot title and submission clause, we employ all legitimate presumptions in favor of the propriety of the Title Board's actions. *In re 2009–2010 No. 45*, 234 P.3d at 645. We will not consider whether the Title Board set the best possible title. *Id.* at 648. Rather, the title must fairly reflect a proposed initiative such that voters will not be misled into supporting or opposing the initiative because of the words employed by the Title Board. *In re 2011–2012 No. 45*, 274 P.3d at 582.

### 1.  The Titles Satisfy the Clear Title Requirement

¶ 21 Petitioners argue that the titles of the Proposed Initiatives are misleading because: (1) the titles fail to inform voters that the Proposed Initiatives do not bar federal takings claims under the United States Constitution; (2) the titles fail to inform voters that the Proposed Initiatives may only affect oil and gas resources belonging to the State of Colorado; (3) the titles use the term "statewide setback," which Petitioners contend is an impermissible catch phrase; and (4) the titles for Initiatives #86 and #87 conflict with the title set for Initiative #85.

---

4.  Petitioners make no claim here, nor did they before the Title Board, that the titles for the Proposed Initiatives fail to provide a clear understanding of the effect of a "yes/for" or "no/against" vote. *Cf. In re Proposed Ballot Initiative*

¶ 22 In their cross-petition, Proponents argue that the Title Board erred in excluding the phrase "hydraulic fracturing" from the titles of Initiatives #86 and #87, rendering the titles incomplete and unclear. We disagree with the contentions by both Petitioners and Proponents, and hold that the titles set by the Title Board satisfy the clear title requirement because they are not misleading and fairly reflect the purpose of the Proposed Initiatives.

#### i.

¶ 23 Petitioners argue that the titles are misleading because they fail to inform voters that the Proposed Initiatives would not affect takings claims under the United States Constitution. They contend that because the titles state that "the statewide setback is not a taking ... under the Colorado constitution," the titles must likewise notify voters that the Proposed Initiatives do not bar federal takings claims. Petitioners argue that in the absence of such notice, voters will be misled into believing that the Proposed Initiatives bar all takings claims, and that this potential confusion renders the titles unclear. We disagree.

¶ 24 The titles state that "the statewide setback is not a taking of private property ... under the Colorado constitution." This phrasing tracks the language in section 3 of the Proposed Initiatives, which provides, "the *statewide setback* established pursuant to this article *shall not be considered a taking of private property* nor require the payment of just compensation *pursuant to sections 14 and 15 of article II of the Colorado constitution.*" (Emphasis added). Petitioners argue that even though the Proposed Initiatives are silent with regard to federal takings claims, voters must nevertheless be informed in the title that the Proposed Initiatives would not bar federal takings claims because they might otherwise be misled into believing that the "not a taking" provision bars all takings claims. However, the legal

*on Parental Rights,* 913 P.2d 1127, 1130 (Colo. 1996) (refusing to address issue raised by Petitioners that was not raised before the Title Board).

interpretation or potential effect of the Proposed Initiatives is beyond our scope of review here. *See Blake v. King,* 185 P.3d 142, 145 (Colo.2008) ("At this stage, we do not address the merits of a proposed measure, interpret it, or *construe its future legal effects.*") (emphasis added).

¶ 25 Moreover, a title is not unclear or misleading simply because it does "not refer to the initiative's possible interplay with existing state and federal laws." *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 No. 255,* 4 P.3d 485, 498 (Colo.2000) (citing *In re Branch Banking Initiative Adopted on Mar. 19, 1980, & Amended on Apr. 8, 1980,* 200 Colo. 85, 612 P.2d 96, 99 (1980)); *see also In re Constitutional Amendment Concerning the Fair Treatment of Injured Workers,* 873 P.2d 718, 720 (Colo.1994) ("*In re Fair Treatment I* ") ("[T]here is no requirement that the title, ballot title and submission clause or the summary state the effect an initiative may have on other constitutional and statutory provisions."). Here, the Proposed Initiatives' effect (or lack thereof) on the federal takings clause is a matter "for judicial determination in a proper case should the voters approve the initiative," *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 No. 200A,* 992 P.2d 27, 30 (Colo.2000), but does not render the titles unclear or misleading.

### ii.

¶ 26 Next, Petitioners argue that the titles are misleading because they fail to inform voters that the Proposed Initiatives only affect oil and gas resources owned by the state. Section 2 of each initiative provides, "[f]or purposes of this article, 'oil and gas development' means exploration for and production of *Colorado's* oil, gas, other gaseous and liquid hydrocarbons, and carbon dioxide." (Emphasis added). Petitioners argue that the use of the possessive noun, "Colorado's," indicates that the Proposed Initiatives' setback requirements only apply to oil and gas resources owned by the state and administered by the State Land Board.

¶ 27 Proponents respond that the Proposed Initiatives do not apply exclusively to oil and gas resources owned by the state, and that the titles are correct in not stating otherwise. Rather, the initiatives apply to oil, gas, other gaseous and liquid hydrocarbons, and carbon dioxide located within Colorado's geographic borders, as evidenced by two statements in the initiatives. First, section 2 of each initiative requires a setback on "all new oil and gas wells requiring a state or local permit," without regard to who owns the well. Second, section 3 of each initiative states that "[a]pplication of the statewide setback ... shall not be considered a taking of private property." Proponents argue that because the "not a taking" provision applies only to takings of privately-owned resources, Petitioners' interpretation that the Proposed Initiatives apply only to state-owned oil and gas wells makes little sense.

¶ 28 The Title Board relied on Proponents' testimony regarding the meaning of the initiatives to conclude that the term "Colorado's" referred to the state's geographic boundaries, and that the Proposed Initiatives' setback requirements are not limited to state-owned oil and gas wells. *See In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative on Water Rights,* 877 P.2d 321, 327 (Colo.1994) ("It is appropriate for the Board, when setting a title, to consider the testimony of Proponents concerning the intent and meaning of a proposal.").

¶ 29 We conclude that nothing in the plain language of the Proposed Initiatives limits their application to state-owned oil and gas resources. In construing the text of a proposed initiative, we employ general rules of statutory construction and accord the language of the proposed initiative and its title its plain meaning. *In re 2011–2012 No. 3,* 274 P.3d at 565. When read as a whole, "oil and gas development" as used in the Proposed Initiatives means exploration for and production of oil, gas, other gaseous and liquid hydrocarbons, and carbon dioxide located within Colorado's geographic boundaries. We thus disagree with Petitioners' contention that the Proposed Initiatives' titles are misleading on this ground. *See In re Fair Treatment I,* 873 P.2d at 720 (rejecting a challenge to a ballot title because "petition-

ers' argument is based on their interpretation of the proposed initiative, not on its express language").

### iii.

¶ 30 Petitioners argue that the term "statewide setback" in the titles is an impermissible catch phrase and that its alliterative quality distracts voters from the Proposed Initiatives' actual function of prohibiting the location of oil and gas wells within a certain distance of an occupied structure. Petitioners contend that the actual function of the Proposed Initiatives is not to regulate new oil and gas wells through a setback requirement, but instead to "override existing state rules concerning where oil and gas wells can be located in a way that may result in a total prohibition of oil and gas development in some high density areas." Based on this interpretation of the Proposed Initiatives' effects, Petitioners argue that the term "statewide setback" is not sufficiently descriptive of the true aim of the initiatives.

¶ 31 The Title Board must avoid using catch phrases when setting a title and ballot title and submission clause. *In re 2009–2010 No. 45*, 234 P.3d at 649. The purpose of this prohibition is to "prevent prejudicing voters in favor of the proposed initiative merely by virtue of those words' appeal to emotion and to avoid distracting voters from consideration of the proposed initiative's merits." *Id.* Phrases that merely describe the proposed initiative are not impermissible catch phrases. *Id.*

¶ 32 Here the titles' use of the term "statewide setback" was drawn directly from the text of the Proposed Initiatives, and its inclusion in the title provides an accurate description of what the Proposed Initiatives would do, namely, create a "statewide setback" requirement. This phrase neither evokes emotion nor engenders voter confusion, and thus, is not an impermissible catch phrase.

¶ 33 Petitioners' contention that the term "statewide setback" is misleading—because the functional effect of the Proposed Initiatives is to prohibit new oil and gas wells in densely populated areas—does not concern the propriety of the titles, but is instead an argument regarding potential future application of the Proposed Initiatives. *See In re 1999–2000 No. 200A*, 992 P.2d at 30 (a reviewing court should not "determine the initiative's efficacy, construction, or future application"). Petitioners' argument "invites us to speculate on the motivations of initiative proponents or to construe the legal effect of the initiative as if it were law." *Id.* Recognizing that such speculation falls well beyond the scope of our review, we decline this invitation, and hold that the inclusion of the term "statewide setback" is not misleading.

### iv.

¶ 34 Finally, Petitioners argue that the titles, as set by the Title Board, violate the statutory provision requiring that ballot titles "shall not conflict with those selected for any petition previously filed for the same election." § 1–40–106(3)(b). Specifically, Petitioners argue that the titles for Initiatives # 86 and # 87 conflict with the title set for Initiative # 85. Petitioners contend that "[a]lthough the language of the titles is not absolutely identical, discerning the differences requires a line-by-line comparison." Petitioners urge the court, at a minimum, to "remand the titles to the Title Board with instructions to require that the differences between the Proposed Initiatives appear at the very beginning of the titles."

¶ 35 At the rehearing before the Title Board, and in their briefs to this court, Proponents specifically represented that they intend to circulate and place on the ballot only one of the challenged initiatives; thus, there is no risk of voter confusion. We note that the Title Board conditioned approval of the titles for Initiatives # 85 through # 88 on Proponents' representations that they will circulate only one version of their measure.[5] Proponents further argue that, although the Proposed Initiatives do conflict, the titles do not conflict.

---

**5.** The Title Board represented to this court that it may have proceeded differently had Proponents indicated that they intended to circulate more than one of the initiatives in the # 85 through # 88 series.

¶ 36 Although we accept Proponents' representations that they will circulate only one version of their measure,[6] we also agree with Proponents that the language used in the challenged titles does not give rise to a conflict. "Nothing prevents two conflicting amendments from being proposed or even adopted in the same election." *In re Proposed Initiated Constitutional Amendment Concerning the "Fair Treatment II"*, 877 P.2d 329, 332 (Colo.1994). Rather, a conflict under section 1–40–106(3)(b) exists where the titles of the measures fail to "reflect ... important distinction[s] between them," and "[v]oters comparing the titles ... would [not] be able to distinguish between the two proposed measures." *In re Fair Treatment II*, 877 P.2d at 333. The titles for the Proposed Initiatives reflect the distinctions between the measures, namely that each initiative contains a different setback distance requirement (1500 feet, 2000 feet, or 2640 feet). By expressly stating the different setback distances, the titles permit voters to distinguish between the measures. Accordingly, the titles for the Proposed Initiatives do not conflict with one another or with the title for Initiative # 85.

v.

¶ 37 In their cross-petition, Proponents argue that the titles should mirror the language in the initiatives requiring a statewide setback on all "oil and gas wells requiring a state or local permit, *including those using hydraulic fracturing.*" (Emphasis added). Thus, according to Proponents, the Title Board erred in removing the phrase "including those [oil and gas wells] using hydraulic fracturing" from the titles in Initiatives # 86 and # 87.[7] Proponents contend that the revised titles are misleading because they fail to advise the electorate of the central purpose of the initiatives.

¶ 38 In setting a title, the Title Board is "only obligated to fairly summarize the central points of a proposed measure, and need not refer to every effect that the measure may have on the current statutory scheme." *In re Title, Ballot Title & Submission Clause, & Summary for Petition on Campaign & Political Fin.*, 877 P.2d 311, 315 (Colo.1994). The current titles for the initiatives include the central point of the initiatives—a statewide setback requirement for new oil and gas wells from occupied structures. Although section 2 of the initiatives makes clear that the setback requirement applies to new oil and gas wells "including those using hydraulic fracturing," this method is but one method of developing oil and gas wells. The titles are not misleading simply because they omit hydraulic fracturing or other methods of developing oil and gas wells that are subject to the initiative's setback requirements. *See, e.g., In re Title, Ballot Title & Submission Clause for 2007–2008 No. 62*, 184 P.3d 52, 60 (Colo.2008) ("While titles must be fair, clear, accurate and complete, the Title Board is not required to set out every detail of an initiative."); *In re Title, Ballot Title & Submission Clause, & Summary for 1997–98 No. 62*, 961 P.2d 1077, 1082 (Colo.1998) ("[W]e will not rewrite the titles or submission clause for the Board, and we will reverse the Board's action in preparing them only if they contain a material and significant omission, misstatement, or misrepresentation."); *In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative on Educ. Tax Refund*, 823 P.2d 1353, 1355 (Colo.1991) ("The board is not required to describe every nuance and feature of the proposed measure."). The reference in the titles to "oil and gas development" is sufficient to describe the scope of the Initiatives # 86 and # 87. We thus hold that the titles fairly reflect the central purpose of the initiatives and are not misleading.

6. Petitioners filed supplemental briefing indicating that, contrary to Proponents' representations to this court, Proponents began collecting signatures on Initiatives # 85 and # 88 on June 18, 2014. Proponents responded that media reports cited by Petitioners were inaccurate, and that they have circulated petitions for Initiative # 88, but not for Initiative # 85. Proponents have further represented to this court that once this court rules on the challenges to Initiatives # 85 through # 87, Proponents will make a final decision on which measure to pursue to the ballot.

7. Although the Title Board also removed the phrase "hydraulic fracturing" from the title for Initiative # 85, Proponents raise this argument only with respect to Initiatives # 86 and # 87.

#### IV. Conclusion

¶ 39 We hold that the Proposed Initiatives contain one subject—the creation of a statewide setback from occupied structures for new oil and gas wells. We also hold that the titles set by the Title Board satisfy the clear title requirement because they are not misleading and they fairly reflect the purpose of the initiatives. We therefore affirm the actions of the Title Board.

CHIEF JUSTICE RICE dissents, and JUSTICE HOBBS joins in the dissent.

APPENDIX A—Initiative # 85 and Titles

*Be it Enacted by the People of the State of Colorado:*

SECTION 1. In the constitution of the state of Colorado, add article XXX as follows:

#### ARTICLE XXX

**Mandatory Setback of Oil and Gas Wells**

**Section 1. Purposes and Findings.** THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE:

a) THAT THE CONDUCT OF OIL AND GAS OPERATIONS, INCLUDING THE USE OF HYDRAULIC FRACTURING, MAY IMPACT PUBLIC HEALTH, SAFETY, WELFARE, AND THE ENVIRONMENT;

b) THAT ANY IMPACTS ARE EXPERIENCED MOST DIRECTLY IN LOCAL COMMUNITIES;

c) THAT SUCH IMPACTS ARE MINIMIZED AND MITIGATED BY LOCATING WELLS AWAY FROM OCCUPIED STRUCTURES; AND

d) THAT TO PRESERVE THE PUBLIC'S HEALTH, SAFETY, WELFARE, AND THE ENVIRONMENT, THE PEOPLE DESIRE TO ESTABLISH A STATEWIDE SETBACK REQUIRING NEW OIL AND GAS WELLS TO BE LOCATED AWAY FROM OCCUPIED STRUCTURES, INCLUDING HOMES, SCHOOLS AND HOSPITALS.

**Section 2. Grant of authority.** THE PEOPLE OF THE STATE OF COLORADO HEREBY ESTABLISH A STATEWIDE SETBACK THAT ALL NEW OIL AND GAS WELLS REQUIRING A STATE OR LOCAL PERMIT, INCLUDING THOSE USING HYDRAULIC FRACTURING, MUST BE LOCATED AT LEAST ONE THOUSAND FIVE HUNDRED FEET FROM OCCUPIED STRUCTURES. FOR PURPOSES OF THIS ARTICLE, "OCCUPIED STRUCTURE" MEANS ANY BUILDING OR STRUCTURE THAT REQUIRES A CERTIFICATE OF OCCUPANCY, OR BUILDING OR STRUCTURE INTENDED FOR HUMAN OCCUPANCY, INCLUDING HOMES, SCHOOLS, AND HOSPITALS. FOR PURPOSES OF THIS ARTICLE, "OIL AND GAS OPERATIONS" MEANS EXPLORATION FOR AND PRODUCTION OF COLORADO'S OIL, GAS, OTHER GASEOUS AND LIQUID HYDROCARBONS, AND CARBON DIOXIDE. THE OWNER OF A HOME MAY WAIVE THIS SETBACK ONLY WITH REGARD TO THE OWNER'S HOME.

**Section 3. Not a taking.** APPLICATION OF THE STATEWIDE SETBACK ESTABLISHED PURSUANT TO THIS ARTICLE SHALL NOT BE CONSIDERED A TAKING OF PRIVATE PROPERTY NOR REQUIRE THE PAYMENT OF JUST COMPENSATION PURSUANT TO SECTIONS 14 AND 15 OF ARTICLE II OF THE COLORADO CONSTITUTION.

**Section 4. Self executing, severability, conflicting provisions.** ALL PROVISIONS OF THIS ARTICLE ARE SELF-EXECUTING, ARE SEVERABLE AND SHALL SUPERSEDE CONFLICTING STATE AND LOCAL LAWS AND REGULATIONS. LAWS AND REGULATIONS MAY BE ENACTED TO FACILITATE THE OPERATION OF THIS ARTICLE, BUT CANNOT IN ANY WAY REDUCE THE SETBACK STANDARD OR THE POWERS AND RIGHTS ESTABLISHED IN THIS ARTICLE.

*Ballot Title Setting Board*

**Proposed Initiative 2013–2014 # 85**

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning a statewide setback requirement for new oil and gas wells, and, in connection therewith, changing existing setback requirements to require any new oil or gas well to be located at least 1,500 feet from the nearest occupied structure; authorizing a homeowner to waive the setback requirement for the homeowner's home; and establishing that the statewide setback requirement is not a taking of private property requiring compensation under the Colorado constitution.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning a statewide setback requirement for new oil and gas wells, and, in connection therewith, changing existing setback requirements to require any new oil or gas well to be located at least 1,500 feet from the nearest occupied structure; authorizing a homeowner to waive the setback requirement for the homeowner's home; and establishing that the statewide setback requirement is not a taking of private property requiring compensation under the Colorado constitution?

APPENDIX B—Initiative # 86 and Titles

*Be it Enacted by the People of the State of Colorado:*

SECTION 1. In the constitution of the state of Colorado, add article XXX as follows:

### ARTICLE XXX

**Mandatory Setback of Oil and Gas Wells**

**Section 1. Purposes and Findings.** THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE:

a) THAT THE CONDUCT OF OIL AND GAS DEVELOPMENT, INCLUDING THE USE OF HYDRAULIC FRACTURING, MAY IMPACT PUBLIC HEALTH, SAFETY, WELFARE, AND THE ENVIRONMENT;

b) THAT ANY IMPACTS ARE EXPERIENCED MOST DIRECTLY IN LOCAL COMMUNITIES;

c) THAT SUCH IMPACTS ARE MINIMIZED AND MITIGATED BY LOCATING WELLS AWAY FROM OCCUPIED STRUCTURES; AND

d) THAT TO PRESERVE THE PUBLIC'S HEALTH, SAFETY, WELFARE, AND THE ENVIRONMENT, THE PEOPLE DESIRE TO ESTABLISH A STATEWIDE SETBACK REQUIRING NEW OIL AND GAS WELLS TO BE LOCATED AWAY FROM OCCUPIED STRUCTURES, INCLUDING HOMES, SCHOOLS AND HOSPITALS.

**Section 2. Grant of authority.** THE PEOPLE OF THE STATE OF COLORADO HEREBY ESTABLISH A STATEWIDE SETBACK THAT ALL NEW OIL AND GAS WELLS REQUIRING A STATE OR LOCAL PERMIT, INCLUDING THOSE USING HYDRAULIC FRACTURING, MUST BE LOCATED AT LEAST TWO THOUSAND FEET FROM OCCUPIED STRUCTURES. FOR PURPOSES OF THIS ARTICLE, "OCCUPIED STRUCTURE" MEANS ANY BUILDING OR STRUCTURE THAT REQUIRES A CERTIFICATE OF OCCUPANCY, OR BUILDING OR STRUCTURE INTENDED FOR HUMAN OCCUPANCY, INCLUDING HOMES, SCHOOLS, AND HOSPITALS. FOR PURPOSES OF THIS ARTICLE, "OIL AND GAS DEVELOPMENT" MEANS EXPLORATION FOR AND PRODUCTION OF COLORADO'S OIL, GAS, OTHER GASEOUS AND LIQUID HYDROCARBONS, AND CARBON DIOXIDE. THE OWNER OF A HOME MAY WAIVE THIS SETBACK ONLY WITH REGARD TO THE OWNER'S HOME.

**Section 3. Not a taking.** APPLICATION OF THE STATEWIDE SETBACK ESTABLISHED PURSUANT TO THIS ARTICLE SHALL NOT BE CONSIDERED A TAKING OF PRIVATE PROPERTY NOR REQUIRE THE PAYMENT OF JUST COMPENSATION PURSUANT TO SECTIONS

14 AND 15 OF ARTICLE II OF THE COL-ORADO CONSTITUTION.

**Section 4. Self executing, severability, conflicting provisions.** ALL PROVISIONS OF THIS ARTICLE ARE SELF–EXE-CUTING, ARE SEVERABLE AND SHALL SUPERSEDE CONFLICTING STATE AND LOCAL LAWS AND REGU-LATIONS. LAWS AND REGULATIONS MAY BE ENACTED TO FACILITATE THE OPERATION OF THIS ARTICLE, BUT CANNOT IN ANY WAY REDUCE THE SETBACK STANDARD OR THE POWERS AND RIGHTS ESTABLISHED IN THIS ARTICLE.

### *Ballot Title Setting Board*

#### Proposed Initiative 2013–2014 # 86

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning a statewide setback requirement for new oil and gas wells, and, in connection therewith, changing existing setback requirements to require any new oil or gas well to be located at least 2,000 feet from the nearest occupied structure; authorizing a homeowner to waive the setback requirement for the homeowner's home; and establishing that the statewide setback requirement is not a taking of private property requiring compensation under the Colorado constitution.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning a statewide setback requirement for new oil and gas wells, and, in connection therewith, changing existing setback requirements to require any new oil or gas well to be located at least 2,000 feet from the nearest occupied structure; authorizing a homeowner to waive the setback requirement for the homeowner's home; and establishing that the statewide setback requirement is not a taking of private property requir-ing compensation under the Colorado constitution?

APPENDIX C—Initiative # 87 and Titles

*Be it Enacted by the People of the State of Colorado:*

SECTION 1. In the constitution of the state of Colorado, add article XXX as follows:

#### ARTICLE XXX

#### Mandatory Setback of Oil and Gas Wells

**Section 1. Purposes and Findings.** THE PEOPLE OF THE STATE OF COLORA-DO FIND AND DECLARE:

a) THAT THE CONDUCT OF OIL AND GAS DEVELOPMENT, IN-CLUDING THE USE OF HYDRAU-LIC FRACTURING, MAY IMPACT PUBLIC HEALTH, SAFETY, WEL-FARE, AND THE ENVIRONMENT;

b) THAT ANY IMPACTS ARE EXPE-RIENCED MOST DIRECTLY IN LOCAL COMMUNITIES;

c) THAT SUCH IMPACTS ARE MINI-MIZED AND MITIGATED BY LO-CATING WELLS AWAY FROM OC-CUPIED STRUCTURES; AND

d) THAT TO PRESERVE THE PUB-LIC'S HEALTH, SAFETY, WEL-FARE, AND THE ENVIRONMENT, THE PEOPLE DESIRE TO ESTAB-LISH A STATEWIDE SETBACK REQUIRING NEW OIL AND GAS WELLS TO BE LOCATED AWAY FROM OCCUPIED STRUCTURES, INCLUDING HOMES, SCHOOLS AND HOSPITALS.

**Section 2. Grant of authority.** THE PEOPLE OF THE STATE OF COLORA-DO HEREBY ESTABLISH A STATE-WIDE SETBACK THAT ALL NEW OIL AND GAS WELLS REQUIRING A STATE OR LOCAL PERMIT, INCLUDING THOSE USING HYDRAULIC FRACTUR-ING, MUST BE LOCATED AT LEAST TWO THOUSAND SIX HUNDRED FOR-TY FEET FROM OCCUPIED STRUC-TURES. FOR PURPOSES OF THIS AR-TICLE, "OCCUPIED STRUCTURE" MEANS ANY BUILDING OR STRUC-TURE THAT REQUIRES A CERTIFI-

CATE OF OCCUPANCY, OR BUILDING OR STRUCTURE INTENDED FOR HUMAN OCCUPANCY, INCLUDING HOMES, SCHOOLS, AND HOSPITALS. FOR PURPOSES OF THIS ARTICLE, "OIL AND GAS DEVELOPMENT" MEANS EXPLORATION FOR AND PRODUCTION OF COLORADO'S OIL, GAS, OTHER GASEOUS AND LIQUID HYDROCARBONS, AND CARBON DIOXIDE. THE OWNER OF A HOME MAY WAIVE THIS SETBACK ONLY WITH REGARD TO THE OWNER'S HOME.

**Section 3. Not a taking.** APPLICATION OF THE STATEWIDE SETBACK ESTABLISHED PURSUANT TO THIS ARTICLE SHALL NOT BE CONSIDERED A TAKING OF PRIVATE PROPERTY NOR REQUIRE THE PAYMENT OF JUST COMPENSATION PURSUANT TO SECTIONS 14 AND 15 OF ARTICLE II OF THE COLORADO CONSTITUTION.

**Section 4. Self executing, severability, conflicting provisions.** ALL PROVISIONS OF THIS ARTICLE ARE SELF-EXECUTING, ARE SEVERABLE AND SHALL SUPERSEDE CONFLICTING STATE AND LOCAL LAWS AND REGULATIONS. LAWS AND REGULATIONS MAY BE ENACTED TO FACILITATE THE OPERATION OF THIS ARTICLE, BUT CANNOT IN ANY WAY REDUCE THE SETBACK STANDARD OR THE POWERS AND RIGHTS ESTABLISHED IN THIS ARTICLE.

### *Ballot Title Setting Board*

#### Proposed Initiative 2013–2014 # 87

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning a statewide setback requirement for new oil and gas wells, and, in connection therewith, changing existing setback requirements to require any new oil or gas well to be located at least one half mile from the nearest occupied structure; authorizing a homeowner to waive the setback requirement for the home-

owner's home; and establishing that the statewide setback requirement is not a taking of private property requiring compensation under the Colorado constitution.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning a statewide setback requirement for new oil and gas wells, and, in connection therewith, changing existing setback requirements to require any new oil or gas well to be located at least one half mile from the nearest occupied structure; authorizing a homeowner to waive the setback requirement for the homeowner's home; and establishing that the statewide setback requirement is not a taking of private property requiring compensation under the Colorado constitution?

CHIEF JUSTICE RICE dissenting.

¶ 40 The Proposed Initiatives violate the single subject rule contained in article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5(1)(e), C.R.S. (2013), by (1) creating a setback requirement prohibiting oil and gas developers from locating new wells within a certain distance of occupied structures, and (2) partially divesting property owners of the right to just compensation for the taking of private property. The purposes of these two distinct subjects are not dependent upon or connected with each other. As such, the Proposed Initiatives violate the single subject rule.

¶ 41 The Proposed Initiatives could surprise voters who own property near oil and gas deposits and support a setback requirement by including a surreptitious provision that could curtail the voters' constitutional rights to just compensation for a taking of their property. Moreover, even the Proponents—by submitting another version of the Proposed Initiatives to the Title Board that creates a setback requirement without implicating takings law—appear to have recognized the incongruous and inessential nature of the takings limitation to setback creation. *See* Proposed Initiative 2013–2014 # 88.

¶ 42 In addition to violating the single subject rule, the titles set by the Title Board could unfairly mislead voters by failing to provide a clear understanding of the effect of a "yes/for" or "no/against" vote on the Proposed Initiatives, and by describing the takings subject in a way that omits the implication in the text that the Proposed Initiatives might exempt setbacks from federal takings law.

¶ 43 Because the Proposed Initiatives and their titles violate the single subject requirement and could unfairly mislead voters, I respectfully dissent from the majority's decision to affirm the Title Board.

## I. Facts and Proceedings Below

¶ 44 The Proponents submitted the Proposed Initiatives to the Office of Legislative Council on March 3, 2014. The Office of Legislative Council and the Office of Legislative Services held a public review and comment meeting with the Proponents on March 17, 2014. After this meeting, the Proponents filed the Proposed Initiatives with the Secretary of State. The Secretary of State's office placed the Proposed Initiatives on the agenda for a public hearing before the Title Board on April 3, 2014.

¶ 45 During the hearing, the Title Board found that the Proposed Initiatives contained a single subject. It then set titles for the Proposed Initiatives. The title for Proposed Initiative # 85 reads as follows:

> An amendment to the Colorado constitution concerning a statewide setback requirement for new oil and gas wells, and, in connection therewith, changing existing setback requirements to require any new oil or gas well to be located at least 1,500 feet from the nearest occupied structure; authorizing a homeowner to waive the setback requirement for the homeowner's home; and establishing that the statewide setback requirement is *not a taking* of private property requiring compensation under the Colorado constitution.

(Emphasis added.)

¶ 46 The Title Board set titles for Proposed Initiatives # 86 and # 87 that are iden-

tical to the title for Proposed Initiative # 85, save for the lengths of the required setbacks.[8] Opponents of the Proposed Initiatives filed motions for rehearing with the Title Board on the grounds that the titles contained multiple subjects. The Title Board modified the titles slightly—and inconsequentially for the purposes of this analysis—and denied the motions for rehearing. The Opponents petitioned this Court for its original review of the Title Board's actions pursuant to section 1–40–107(2), C.R.S. (2013).

## II. Standard of Review

¶ 47 Our limited role in the title setting process prohibits us from addressing the merits of a proposed initiative and from suggesting how an initiative might be applied if enacted. *In re Title, Ballot Title and Submission Clause for Proposed Initiative 2001–2002 No. 43*, 46 P.3d 438, 443 (Colo.2002) [hereinafter *In re Proposed Initiative 2001–2002 No. 43*]. This Court also "employ[s] all legitimate presumptions in favor of the propriety of the [Title] Board's actions." *In re Title, Ballot Title, and Submission Clause for 2009–2010 No. 45*, 234 P.3d 642, 645 (Colo.2010) [hereinafter *In re Proposed Initiative 2009–2010 No. 45*]. The Court will examine Proposed Initiatives thoroughly enough, however, to determine whether they violate the constitutional prohibition against initiative proposals containing multiple subjects. *In re Title, Ballot Title, Submission Clause for 2011–2012 No. 3*, 2012 CO 25, ¶ 8, 274 P.3d 562 [hereinafter *In re Proposed Initiative 2011–2012 No. 3*].

¶ 48 We also analyze the plain language of the titles to determine whether the titles are fair, clear, accurate, and complete. *See In re Proposed Initiative 2009–2010 No. 45*, 234 P.3d at 649. The titles must "unambiguously state the principle of the provision sought to be added, amended, or repealed." § 1–40–106(3)(b), C.R.S. (2013). The Court will reverse the Title Board's designation if the titles are "insufficient, unfair, or misleading."

---

8. Initiative # 86 would require a 2000–foot setback, while Initiative # 87 would require a 2640– foot (half mile) setback.

*In re Proposed Initiative 2009–2010 No. 45,* 234 P.3d at 648.

### III. Analysis

¶ 49 I would hold that the Proposed Initiatives violate the single subject rule contained in article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5(1)(e). I would also hold that the Title Board crafted the titles in a manner that unfairly misleads voters by failing to provide a clear understanding of the effect of a "yes/for" or "no/against" vote on the Proposed Initiatives and by omitting the implication in Section 3 of the text that the Proposed Initiatives might exempt setbacks from federal takings law. I first turn to why, in my view, the Proposed Initiatives violate the single subject requirement.

### A. The Proposed Initiatives Violate the Single Subject Requirement

¶ 50 Colorado law requires "that every constitutional amendment or law proposed by initiative ... be limited to a single subject, which shall be clearly expressed in its title." § 1–40–106.5(1)(a); *see also* Colo. Const. art. V, § 1(5.5) (prohibiting ballot measures from containing more than one subject and requiring the title of a measure to clearly express the single subject). To determine if a proposed initiative violates this rule, we apply the test originally stated in *People ex rel. Elder v. Sours,* 31 Colo. 369, 403, 74 P. 167, 177 (1903): The text of the measure "must relate to more than one subject, and have at least two distinct and separate purposes which are not dependent upon or connected with each other." *See In re Proposed Initiative 2011–2012 No. 3,* ¶ 9 (citing *Sours* test); *see also In re Proposed Initiative 2001–2002 No. 43,* 46 P.3d at 441. As such, the subject matter of an initiative must be "necessarily [and] properly connected," rather than "disconnected or incongruous." *In re Proposed Initiative on Public Rights in Waters II,* 898 P.2d 1076, 1079 (Colo.1995) [hereinafter *Public Rights in Waters II* ]. A proponent's attempt to characterize a proposed initiative under "some overarching theme" will not save the measure if it contains separate and unconnected purposes. *In re Proposed Initiative 2001–2002 No. 43,* 46 P.3d at 442.

¶ 51 We have previously explained the importance of the single subject rule in preventing the negative effects associated with omnibus initiatives. *See id.* at 442–43. For example, the single subject rule helps avoid "voter surprise and fraud occasioned by the inadvertent passage of a surreptitious provision 'coiled up in the folds' of a complex initiative." *Id.* at 442; *see also* § 1–40–106.5(1)(e)(II).

¶ 52 In this instance, the Proposed Initiatives relate to two subjects that have "two distinct and separate purposes which are not dependent upon or connected [to] each other." *See In re Proposed Initiative 2011–2012 No. 3,* ¶ 9. The first subject is a setback requirement prohibiting the construction of new oil and gas wells within a certain distance of occupied structures such as homes, schools, and hospitals. The stated purpose of this subject is to "preserve the public's health, safety, welfare, and the environment."

¶ 53 The second subject is a limitation on what constitutes a taking that merits just compensation. The "not a taking" clause in Section 3 of the Proposed Initiatives provides:

> Application of the statewide setback established pursuant to this article shall not be considered a taking of private property nor require the payment of just compensation pursuant to sections 14 and 15 of Article II of the Colorado Constitution.

¶ 54 The Proposed Initiatives do not articulate how limiting the scope of what constitutes a taking serves the purpose of preserving the public's health, safety, welfare, or the environment. Such preservation certainly does not depend upon categorically exempting oil and gas well setbacks from takings law, nor is the takings exemption even connected to this purpose. To the contrary, the public's welfare could actually suffer due to the Proposed Initiatives' elimination of an opportunity for just compensation. Although we cannot speculate as to the intended purpose of the takings limitation, the "not a taking" clause does not serve the stated purpose of preserving the public's health, safety, welfare, or the environment. The purposes

of the Proposed Initiatives are therefore "disconnected [and] incongruous" and demonstrate that the Proposed Initiatives "relate[ ] to more than one subject." *In re Proposed Initiative 2011–2012 No. 3*, ¶ 9.

¶ 55 Although the "not a taking" clause in Section 3 of the Proposed Initiatives specifically exempts setbacks from takings protections, the clause's tie to the overarching "setback" theme does not prevent the Proposed Initiatives from violating the single subject rule. *See id.* at ¶ 10. This Court has held that "water" and "revenue changes" are two examples of "overarching themes" that did not qualify as single subjects when the proposed initiatives associated with those themes contained disconnected or incongruous provisions. *See Public Rights in Waters II*, 898 P.2d at 1080 (holding that the theme of "water" did not satisfy the single subject rule when the measure contained two separate subjects—water conservation district elections and the public trust doctrine); *In re Proposed Initiative Amend TABOR 25*, 900 P.2d 121, 125 (Colo.1995) (holding that the umbrella subject of "revenue changes" did not alter the fact that the measure contained two unrelated subjects—a tax credit and changes to the procedural requirements for ballot titles). In much the same way that "water" and "revenue changes" constitute "overarching themes" that fail to satisfy the single subject rule, the overarching theme of "setbacks" does not qualify as a single subject because the Proposed Initiatives contain disconnected and incongruous provisions that create a setback requirement on the one hand and limit takings law on the other.

¶ 56 Moreover, the fact that the plain language of the Proposed Initiatives does not articulate a clear purpose for the "not a taking" clause could lead to "voter surprise ... occasioned by the inadvertent passage of a surreptitious provision 'coiled up in the folds' of a complex initiative." *In re Proposed Initiative 2001–2002 No. 43*, 46 P.3d at 442; *see also* § 1–40–106.5(1)(e)(II). While voters who own property near oil and gas deposits might support the Proposed Initiatives' attempt to impose setback requirements on new wells, those same voters might be surprised to learn that voting for the setback measure could also curtail their own constitutional rights to just compensation for a potential taking of their property. Holding that the Proposed Initiatives violate the single subject requirement would avoid this improper surprise.

## B. The Titles Are Unfairly Misleading

¶ 57 In my view, the titles unfairly mislead voters because they fail to provide a clear understanding of the effect of a "yes/for" or "no/against" vote on the Proposed Initiatives, and they describe the takings subject in a way that omits the implication in Section 3 of the text that the Proposed Initiatives might exempt setbacks from federal takings law.

¶ 58 To start, a "yes" vote on any of the Proposed Initiatives would support the negative statement that a setback is "not a taking of private property requiring compensation under the Colorado constitution," and would also express the voter's affirmative desire to prevent oil and gas developers from locating new wells near occupied structures. The semantic confusion that arises when a "yes" vote would both negatively impact the scope of takings law and affirmatively create a setback demonstrates that the "general understanding of the effect of a 'yes/for' or 'no/against' vote will be unclear" to voters, see section 1–40–106(3)(b), because "yes" would mean "no" in one respect (no on takings) and "yes" in another (yes on setbacks).

¶ 59 Furthermore, the titles could unfairly mislead voters because they omit the implication in Section 3 of the text that the Proposed Initiatives could exempt setbacks from federal takings protections. The titles state that a setback is "not a taking of private property requiring compensation under the Colorado constitution." A voter would likely interpret the plain language of this clause to only narrow the scope of Colorado takings law without venturing into the federal takings arena. Section 3 of the Proposed Initiatives' text, however, states that "[a]pplication of the statewide setback established pursuant to this article *shall not be considered a taking of private property nor* require the payment of just compensation pursuant to sections 14 and 15 of Article II of the Colorado constitution." (Emphasis added.) Unlike

the exclusively Colorado-specific titles, Section 3 of the Proposed Initiatives' text separates the "not a taking" language from the Colorado-specific portion of the provision with the disjunctive word "nor." This use of "nor" could lead voters to believe that a setback created by the Proposed Initiatives can *never* constitute a taking under state or federal law because the "not a taking" portion of Section 3 does not specify whether the word "taking" applies to state takings, to federal takings, or to both.

¶ 60 The inconsistency between the titles and the text of Section 3 could unfairly mislead voters to adopt a provision that might fail under the United States Constitution. The most expansive reading of the ambiguous term "taking" in Section 3 would violate the Supremacy Clause by allowing state law to trump federal takings protections. *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause); *Middleton v. Hartman,* 45 P.3d 721, 731 (Colo.2002) ("The Supremacy Clause mandates that state law give way when it conflicts with federal law."). The Supremacy Clause implications of Section 3 might surprise a voter who only reads the narrow, Colorado-specific, takings limitation stated in the titles. Neither a proposed initiative nor its titles should unfairly mislead voters into adopting an ambiguous provision that could violate the United States Constitution, particularly when, as here, the titles fail to put voters on notice about the textual ambiguity.

¶ 61 I would reverse the Title Board's actions because the titles unfairly mislead voters by failing to provide a clear understanding of the effect of a "yes/for" or "no/against" vote on the Proposed Initiatives, and by failing to acknowledge the implication in Section 3 that the Proposed Initiatives might exempt setbacks from federal takings law in a way that could violate the Supremacy Clause.

### IV. Conclusion

¶ 62 The Proposed Initiatives and their titles violate the single subject rule and could unfairly mislead voters. I would therefore reverse the Title Board's determination that the Proposed Initiatives contain a single subject and would remand the Proposed Initiatives to the Title Board with instructions to return the Proposed Initiatives to the Proponents. I therefore respectfully dissent from the majority's decision affirming the Title Board.

I am authorized to state that JUSTICE HOBBS joins in this dissent.